THE ROCKFORD INSURANCE COMPANY V. M. A.
WINFIELD.
No. 8983.

1. INSURANCE AGENT—*interest of in property known to insured but not to company, policy not binding.* J. the agent of an insurance company was the cashier of one bank and the president of another. W. a dealer in grain and seeds was indebted to the banks in an amount exceeding the value of the property in store, and she issued warehouse receipts to them covering substantially all of it. J. wrote for W. a policy of fire insurance upon said property and duly notified the company, but gave no information touching the relation of himself and the banks to the insured property. The risk was declined for other reasons, and J. was so notified by mail, but he did not receive the notice until two or three days before the destruction of the property by fire and he did not notify W. until after such destruction. W. had not actually paid the premium, but it was advanced by J. and on the declination of the risk was passed to his credit by the company and afterward returned to him. *Held,* that on account of the dual relations of J. whereof W. had knowledge, the policy cannot be enforced against the company.

2. PROOF OF LOSS—*no waiver of, under facts of this case.* W. made only informal proof of the loss, and it is held that upon the facts stated there was no waiver of formal proof by the company.

*Error from Neosho District Court.*
*Hon. L. Stillwell, Judge.*

REVERSED AND REMANDED.        OPINION FILED JANUARY 8, 1897.

ON February 19, 1892, M. A. Winfield filed her petition against the Rockford Insurance Company to recover $2,000 and interest on a policy of insurance dated December 4, 1891, alleging the loss of the insured property by fire January 23, 1892. The property insured in favor of M. A. Winfield was thus described in the policy :

"On her stock of implements, buggies, spring wagons, sewing machines, separators, steam engines, horse power and machine fixtures, baled broom corn, baled hay, grain and seeds of all kinds, and such

other merchandise as is usually kept in a grain and implement store and warehouse, her own or held by her in trust, or on commission, or sold but not delivered, all contained in the first story of the one and two story stone and brick metal roofed building, situated on lot 1 block 35 New Chicago, now Chanute, Kansas: $3500, other concurrent insurance permitted."

The policy was signed by the president and the secretary of the Insurance Company and countersigned at Chanute by J. O. Johnston, agent. Johnston was at the same time cashier of the Bank of Chanute and President of the First National Bank of Erie. M. A. Winfield was largely indebted to said banks, and, to secure the claims, certain notes were deposited as collateral; but the Banks relied mainly upon certain warehouse receipts of the following form:

"No.——     CHANUTE, KAN., November 3, 1891.

Received in warehouse at Chanute, Kansas, from the First National Bank of Erie, Kansas (or the Bank of Chanute, Kansas), five thousand bushels of prime flax seed No. One, subject only to the order hereon of the said bank and the surrender of this receipt. No charges are to be made for the storage of this property, and it is understood that it is absolutely the property of the said bank, to be disposed of at their will and pleasure, and it is only in our possession for storage and safe-keeping. Loss by fire or heating at our risk.                    M. A. WINFIELD."

These receipts covered nearly all the grain and seeds in the warehouse at the time of the fire, and the indebtedness to the banks was in excess of the value of such grain and seeds.

Charles F. Prange, a dealer in agricultural implements, separators, horse-power and machine fixtures, had for some years past kept his goods in the one-

story part of the building, and paid storage thereon to M. A. Winfield, who had insured the property, as in this instance, without mentioning the real ownership. Johnston did not apprise the Insurance Company of the nature of this business, nor did he mention the fact that the banks of which he was an officer substantially owned all the grain and seeds in the warehouse.

On the day the policy was issued Johnston reported it to the Company in the usual manner; and, December 24, remitted to the Company the premiums on this and certain other policies, less his commissions. The risk was declined by the Company, December 21, in a notification to the agent, who was credited with the premium and ordered to cancel the policy without delay; but the envelope was addressed to " Joe Johnston, Agt. Chanute, Kansas," and this misdirection probably led to its detention for a time in the post-office at Chanute, for Johnston had not received it on January 6, 1892, when he started on a trip East; but the letter followed him to New York City, where it was delivered to him by the Chemical National Bank, January 20 or 21. He testified that he opened it hastily with other mail there, and put it into his pocket and forgot it until he was as far as Kansas City on his way back, about the last of January, when he heard of the loss of the property by fire. Soon after his arrival at Chanute, and about February 1, he was called upon by special agents representing the Rockford Company, and two others which had issued policies amounting to $2,500 in addition to that held by the Rockford Company. These special agents made partial inquiry as to the loss, and went away; but returned again about two days thereafter and their investigation was resumed. They requested from

S. Winfield, the husband and agent of M. A. Winfield, an itemized statement of the property destroyed. He explained to them that all his books of account, weigh-books, etc., had been destroyed by fire and that it was impossible to make an exact statement, especially as to the grain and seeds. They then told him that the Company was not liable for the Prange property, and that they would not consider the loss as to the grain and seeds unless it was eliminated. At length, on or about February 6, Winfield delivered to them a written document, directed to them, containing an itemized statement of the quantity and value of the different kinds of grain, seeds, machinery and property destroyed by the fire; the amount for grain, seeds, etc., being $2,721.95, and that for the machinery being $2,977.27, or a total of $5,699.22. This list, after the direction to the several Companies, was headed by the following words : " Gentlemen, I hereby submit to you the following itemized statement of my loss of property insured by you which occurred by fire January 23, 1892. (Signed) M. A. Winfield." The document was not verified, and there was no certificate of a magistrate or other officer that he verily believed the assured had without fraud sustained loss of the property insured to an amount certified by such magistrate, as required by the terms of the policy ; and the foregoing was the only proof of loss made by the assured. On the night of February 6 said special agents wrote a letter of which the following is a copy :

"CHANUTE, KAN., February 6, 1891.
"*To M. A. Winfield, Chanute, Kan.:* You are hereby notified that the statement presented by you through Samuel Winfield (who represents himself to be your attorney in fact) and purporting to show a claim against the companies represented by us is not suffi-

cient and cannot be accepted by us. From it we are unable to ascertain from what source or to what extent in amount your purchases have been, or what the amount of your sales or consignments were at any time during the year 1891, and prior to the date of the alleged fire ; you having alleged that everything in the nature of data relating thereto for the year 1891 and up to and including the date of the alleged fire has been destroyed. We are not in a position to admit or deny liability at this time. You are hereby requested, as required by the printed conditions of our policies, to produce certified copies of all bills or other evidence of your purchases either for cash or on credit or of any property consigned to you on commission, from any and all parties with whom you have transacted business during the year 1891 and up to and including the date of the alleged fire and alleged to have been destroyed or damaged. Also certified copies of all shipments or consignments or sales made by you during the year 1891 and up to and including the date of the alleged fire, also certified copies of your general banking account with any bank or banks showing the amounts drawn by you by checks or otherwise for the purchase of any property during the year 1891 and up to and including the date of the fire, and any other data or evidence which you have or can procure bearing upon your alleged claim. In making these requests it is understood we waive none of the conditions of our policies but shall expect a strict compliance with the printed conditions thereof on your part.

The Liverpool, London & Globe Ins. Co.
By M. W. VanValkenburg, *Special agt.*
The Milwaukee Mechanics Ins. Co.
By M. W. VanValkenburg, *Special agt.*
Rockford Insurance Co.
By F. T. M. Wenie, *Special agt.*"

This letter was brought by one of the special agents to Topeka whence it was forwarded to M. A. Winfield by registered mail and she received it February 8, 1892. Her husband and agent testified that a compliance with the request contained in said letter was

impossible, because the grain and seeds were purchased in small quantities from a great number of persons residing in several counties, and that all accounts of these transactions were destroyed by the fire.

On April 27, 1892, each of said Banks commenced an action against M. A. Winfield upon said indebtedness and proceeded by garnishment against said Insurance Companies; and in July, 1892, the Bank of Chanute recovered a judgment for $3,069.31, and the First National Bank of Erie obtained a judgment for $1,189.50.

This cause was tried before the Court and a jury at November term, 1892, and the plaintiff recovered a judgment for $2,092. A motion for a new trial being overruled the defendant Insurance Company prosecutes its petition in error in this Court.

*Jones & Mason*, for plaintiff in error.

*J. L. Denison*, for defendant in error.

MARTIN, C. J.  I.  When the policy was written J. O. Johnston was the agent of the Insurance Company, the Cashier of the Bank of Chanute and the President of the First National Bank of Erie.  The assured was indebted to these Banks in a sum exceeding the value of all the grain and seeds in store, and these were substantially covered by the warehouse receipts held by the Banks.  This condition of affairs was not disclosed to the Insurance Company by its agent.  So far as it related to the grain and seeds, the policy was issued for the use and benefit of these Banks.  It is an elementary doctrine, subject to certain exceptions not applicable here, that an agent cannot in the same transaction represent two

1. Policy not binding, when.

principals whose interests are conflicting or antagonistic. The law has too much regard for the infirmities of human nature to sanction such a double relation. When an insurance company employs an agent to solicit business for it in a particular locality it has a right to expect that he will act only in its interest in that business. He would not be authorized to write a policy upon his own property, for as to this he would not be the agent of the company, and it would not be bound thereby unless, being fully informed of the facts, the principal officers of the company should accept the risk. Story, Agency, §§ 10, 210 ; May, Ins. § 125. In *New York Central Ins. Co. v. National Protection Ins. Co.*, 14 N. Y. 85, 91, it is said : "It is not necessary for a party seeking to avoid a contract on this ground to show that an improper advantage has been gained over him. It is at his option to repudiate or to affirm the contract irrespective of any proof of actual fraud." The purpose of the doctrine is to remove the temptation to fraud and imposition on the part of those occupying fiduciary relations by divesting them of the legal power to make such fraud or imposition effective. In this case the Insurance Company declined the risk, but the assured was not advised of the declination until after the loss, and this may have been the result of the negligence of the Company in misdirecting the letter. Had Johnston been the agent of the Company in fact and in law as to this transaction, the result of the delay in notification should have been visited upon the Company ; but, as to this insurance, Johnston did not sustain that relation, and the Company, not accepting but declining the risk, was not bound by the terms of the policy. See, further, *Bentley v. Columbia Ins. Co.*, 19 Barb. 595 ; *Spare v. Home Mut. Ins. Co.*, 19 Fed. Rep. 14 ; *Zim-*

*mermann v. Dwelling House Ins. Co.*, ( Mich.) 68 N. W.
Rep. 215.

II. It was the duty of the assured under the pol-
icy to make proofs of her loss substantially as pre-
scribed therein, and this she failed to do, although
she had ample time after the receipt of the letter of
2. No waiver of    date February 6, and before the expira-
proof of loss.     tion of the 30 days from the loss.    In-
deed, she brought suit within less time, although the
policy provided that the loss should be payable 60
days after the proofs should be received at the office
of the Company.   The letter distinctly informed the
assured that the statement presented was not suffi-
cient and could not be accepted, and that the special
agent waived none of the conditions of the policy but
would expect a strict compliance with the printed
conditions thereof ; yet the assured did nothing fur-
ther toward a compliance with the terms of the pol-
icy and the demands of the Insurance Company.
The reasons assigned by the assured for noncompli-
ance are deemed insufficient by a majority of this
Court, although the evidence tends to show, and for
the purpose of sustaining the judgment should be
held to prove, that the special agent declined to con-
sider the loss unless the claim for the Prange imple-
ments and machinery should be detached or eliminated,
and a compliance with the requirements specially
pressed in the letter was impracticable if not entirely
impossible.   The writer is of opinion that the claim
of the assured ought not to be defeated upon this
ground.   The special agents called to investigate and
adjust the loss within little more than a week after
the fire, and before they had any right to expect
formal proofs' of loss.   They then required an item-
ized statement which was made during the investiga-

tion.   It was not verified and there was no certificate of a local magistrate.   If the assured had been able to give the information requested in the letter as to purchases and shipments for 1891 and up to the time of the fire, yet this would have been of no value without knowing the quantities and the kinds of grain and seeds in the warehouse at the beginning of 1891. The ultimate fact was the amount of each kind of grain and seeds in store at the time of the fire, and not when or how it was placed there ; and partial information as to the facts requested would tend to obscure rather than to disclose the truth.   In respect to the verification and the certification the statement of loss was informal ; but as the special agents had investigated the matter on the ground during the greater part of a week, and in writing the letter made no special objection for these reasons, but, on the contrary, required information which the assured could not give, and as they refused to consider the loss unless the claim for the greater part of it was abandoned, the writer is of opinion that formal proofs should be held to be waived and that the rights of the assured ought not to be sacrificed upon a technical insistence devoid of substantial merit.

The judgment must be reversed, and the cause remanded for a new trial.

JOHNSTON, J., and ALLEN, J., concurring.

MARTIN, C. J., dissenting from the second proposition of the syllabus, and from the corresponding portion of the opinion.