[Civ. No. 704.    Third Appellate District.—September 10, 1910.]

BANK OF ANDERSON, a Corporation, Respondent, v. HOME INSURANCE COMPANY OF NEW YORK, a Corporation, Appellant.

FIRE INSURANCE—ACTION ON POLICY—PLEADING—GENERAL DEMURRER—
    EXCUSE FOR PROOFS OF LOSS—IMPLIED AVERMENT.—Where the complaint in an action on a policy of fire insurance alleges a performance of all the terms and conditions of the policy except that as to furnishing proofs of loss, and that said proof of loss was not furnished "for the reason that said defendant *denied and disclaimed* all liability," it appears, at least by necessary implication, that the defendant denied all liability, and a general demurrer to the complaint was properly overruled.

ID.—GENERAL RULES OF PLEADING—WAIVER OF PERFORMANCE—AMBIG-
    UITY—NECESSARY IMPLICATION.—It is a general rule that when a party relies upon the waiver of the performance of an act upon which his right of action depends, such waiver must be specially pleaded, yet it is also an elementary rule that "when necessary facts are shown by the complaint to exist, although inaccurately or ambiguously stated, or appears by necessary implication, the judgment will be sustained. Reason requires that this rule should be applied

in case of a general demurrer." The allegation that a certain condition exists because of a certain fact necessarily carries with it the implication that the fact also exists.

ID.—UNEQUIVOCAL TERMS OF POLICY—WAIVER TO BE APPENDED IN WRITING—POWER OF WAIVER BY GENERAL AGENT.—Notwithstanding the unequivocal and exacting terms of the policy that no officer, agent or representative of the company shall have power to waive any provision or condition of this policy unless the agreement therefor is indorsed upon or attached to the policy, nor shall any privilege or permission exist or be claimed by the insurer unless so written or attached, yet it is settled by the decisions, beyond controversy, that the insurer may be bound by the waiver of a general agent, although no indorsement whatever is made upon the policy.

ID.—NATURE OF POWERS OF GENERAL AGENTS.—General agents authorized to issue and deliver new policies are regarded as having the same power to waive conditions and forfeitures as the companies themselves. The limitations embodied in the stipulation do not prevent them from making new contracts; and waivers constituting a new contract, upon sufficient consideration, need not be evidenced by writing nor indorsed upon the policy, if made by a general agent having power to make the contract, no matter what limitations or conditions may be expressed in the policy.

ID.—LOCAL AGENT HAVING GENERAL POWERS.—Where a local agent received his powers directly from the insurance company, and as agent thereof issued policies, canceled policies, indorsed policies, solicited and wrote insurance, collected the premiums for the company, and remitted them thereto, and attended to the business of the company generally, such powers constituted him a general agent with power to waive conditions and forfeitures on the policies issued by him.

ID.—RULE AS TO GENERAL AGENT.—As a general rule, an agent with general authority is one who is authorized to enter into contracts of insurance without consulting the company, and may waive any of the conditions contained in the policy; and his knowledge of the facts constituting the risk is the knowledge of the company.

ID.—QUESTIONS OF FACT AS TO PARTICULAR AGENT.—Whether or not any particular agent has the general power to make an oral contract, or an oral waiver of a condition, notwithstanding the provision in the policy requires a writing, is a question of fact.

ID.—COEXISTENCE OF GENERAL AGENTS FOR STATE WITH LOCAL AGENT HAVING GENERAL POWERS.—The circumstance that the company had general agents for the state located in San Francisco does not affect the authority of a local agent having general powers in another place, who received his general powers in said place direct from the home office of the fire insurance company in the state of New York, and who signed himself as the direct agent thereof, and had authority to bind his principal as to policies issued by him.

14 Cal. App.—14

ID.—SECOND POLICY—SLIP OF FIRST POLICY GIVEN FOR ATTACHMENT—NEGLECT OF PROMISE—EQUITABLE ESTOPPEL.—Where the policy issued by defendant's local agent, having general powers, was a second policy, and the policy was exhibited to such agent and a slip received therewith was delivered to him with request for its attachment to the second policy, as required by its terms and conditions, which he promised but neglected to attach thereto, the case is rather one of equitable estoppel than of a waiver of the condition of the policy, but with the same effect. The insured, having done all that was required of him, was entitled to rely upon the promise, and equity will treat that as done which ought to have been done, and not permit the defendant to question it.

ID.—SETTLED RULE—ESTOPPEL TO ASSERT FORFEITURE.—The rule is well settled that "when a general agent of a fire insurance company, with power to issue and deliver policies, solicit and write insurance, and otherwise to act for and on behalf of the company in the conduct of its business at a certain place, receives from the insured notice of the taking of other insurance on property covered by a policy issued by such agent, but fails to indorse the company's consent on the policy, as required by the policy's terms, to maintain its validity, and fails to make any objection to the taking of the other insurance, the company is estopped to assert a forfeiture for want of such indorsement."

ID.—EVIDENCE OF WAIVER OR ESTOPPEL.—Evidence was properly admitted to show a waiver or estoppel of the insurance company in relation to a breach of the conditions of the policy by its general agent.

ID.—POLICY MADE PAYABLE TO BANK—SECURITY FOR DEBT—INTEREST OF AGENT IN BANK—RATIFICATION.—Where the policy on the insured property was made payable to a bank to secure a debt of the insured thereto, and the agent who took the policy was vice-president, cashier and manager of the bank to which it was payable, and the company, through its general state agent, with full knowledge of the facts, ratified the transaction, the just and elementary rule applies that since the insurer had knowledge of the bank's interest in the policy, and directed its agent to have the policy made payable to the bank in case of loss, it cannot, after loss, question the authority of its own agent because of an act which it authorized and ratified.

ID.—CAUSE OF COMPLAINT AGAINST AGENT—RIGHTS OF INSURED NOT AFFECTED.—Although, under the facts stated, the insurance company may have just cause of complaint against its agent, yet for his dereliction the insured, free from fault and fraud, cannot be held responsible. There is no principle of law or equity that, under such circumstances, precludes the insured from recovery.

ID.—KNOWLEDGE OF SECOND INSURANCE—RULE OF ESTOPPEL.—Where the knowledge that the insurance affected by the agent of the insur-

ance company was a second insurance was acquired by him as the agent of the company, and was present in his mind when he made the promise to the insured to attach the slip of the first policy to the second policy, this satisfies the requirement of the rule as to equitable estoppel.

ID.—RESPONSIBILITY OF COMPANY TO THIRD PERSONS—SCOPE OF AGENT'S AUTHORITY.—Where there is an agency for an insurance company, the company is bound as to third persons dealing with its agent in good faith as to all matters within the scope of his real or apparent authority.

ID.—ABSENCE OF FRAUD OF INSURED—VALUE OF PROPERTY INSURED.— It is held that there is no evidence of fraud on the part of the insured, nor of any concealment; and that the property at the time of the second insurance far exceeded in value the amount of the two policies.

ID.—SUFFICIENCY OF EVIDENCE—WAIVER OF PROOFS OF LOSS—DENIAL OF LIABILITY.—It is held that there is sufficient evidence to show that defendant disclaimed and denied all liability under the policy, and that the failure of the insured to furnish proofs of loss was excused or waived. Where the conduct of the company is such as to render the production or correction of proofs unavailing, they are deemed waived.

ID.—AUTHORIZED DECLARATION OF ADJUSTER—CONFIRMATION BY STATE AGENT.—The waiver of proof of loss is sufficiently shown, where the adjuster employed by defendant to adjust the loss reiterated to the insured that the "company is not responsible for this loss," and his authority was broad enough to lead the insured reasonably to infer that proofs of loss would be unavailing, especially in view of the written declaration of the state agent, made before proofs were required, confirming such statements by stating that the action of the adjuster would necessarily have been his action.

ID.—PLEADING—ANSWER SETTING UP FORFEITURE—EQUITABLE ESTOPPEL MATTER OF PROOF IN REPLY.—The plaintiff was not required to set up in the complaint the facts constituting the equitable estoppel through neglect of the promise of the agent to indorse the slip of the first policy on the second. When the forfeiture, by reason of the absence of such indorsement, is set up in the answer, the equitable estoppel is matter of proof in reply to the evidence of forfeiture.

ID.—INSTRUCTIONS — WAIVER OF PROVISION INVALIDATING POLICY— KNOWLEDGE OF OTHER INSURANCE—FAILURE TO OBJECT OR CANCEL POLICY — HARMLESS ALTERNATIVE.—An instruction that "a provision of a fire insurance policy that it should be void if the insurer procured other insurance without the consent of the insurer, and without such consent being indorsed upon or attached to the policy, is waived by failure on the part of the insurer to object, or cancel the policy and return the insurance premium before loss by

fire of the insured property, after said insurer had knowledge that other insurance had been procured," is in harmony with many decisions from other jurisdictions; but conceding that our statute does not require the return of the premium in such case, the instruction is without prejudice as to that alternative, it being at least the duty of the insurer to object; and its failure in that respect waived the stipulation.

Id.—Abstract Error Harmless—Undisputed Facts—Promise to Make Indorsement.—Abstract error is harmless where it so appears from the undisputed facts; and it should be entirely disregarded when the evidence shows without conflict that the company, through the authorized agent, promised to make the proper indorsement, which is sufficient to bind the company.

Id.—Immaterial Special Findings—Support of Verdict.—Immaterial special findings which are incorrect, but not inconsistent with the verdict, cannot prevail over material findings supported by the evidence, which support the verdict for the plaintiff.

Id.—Nonwaiver Agreement—Subsequent Waiver of Proofs of Loss not Included.—A nonwaiver agreement signed by the insured cannot have the effect to waive subsequent acts upon which plaintiff relied for a waiver of the requirement of proofs of loss, which are not included within its terms.

APPEAL from a judgment of the Superior Court of Shasta County, and from an order denying a new trial. Charles M. Head, Judge.

The facts are stated in the opinion of the court.

J. F. Riley, for Appellant.

Herzinger & Herzinger, for Respondent.

BURNETT, J.—The action was on a fire insurance policy, and from the judgment in favor of plaintiff and the order denying defendant's motion for a new trial this appeal has been taken. The trial was had before a jury who made special findings upon various issues and also rendered a general verdict in favor of plaintiff for the amount of the policy. The policy was issued December 13, 1906, to Seaman Brothers, through one Barkuloo, the local agent of defendant at Anderson, Shasta county. The plaintiff had advanced said Seaman Brothers money to start them in business, and had the loss under the policy made payable to itself. After the issuance

of the policy sued upon, sometime in the spring of 1907, the exact time not appearing, Seaman Brothers secured other insurance from another company on the same property. The property was destroyed by fire in October, 1907, and the full amount of said second policy was paid. Other facts will appear as we proceed to notice the various points made by appellant.

1. The demurrer to the complaint was properly overruled. The complaint alleges a performance of all the terms and conditions of the policy, except that as to furnishing proofs of loss, and that said proof of loss was not furnished "for the reason that said defendant *denied and disclaimed* all liability." It is the contention of appellant that this is not an allegation that defendant did deny and disclaim all liability and refuse to pay the loss. The rule undoubtedly is that when a party relies upon the waiver of the performance of an act, upon which his right of action depends, such waiver must be specially pleaded. (*Aronson* v. *Frankfort Accident etc. Ins. Co.*, 9 Cal. App. 473, [99 Pac. 437].) But it does appear, at least by necessary implication, that the defendant denied all liability, and it is elementary that "when necessary facts are shown by the complaint to exist, although inaccurately or ambiguously stated, or appearing by necessary implication, the judgment will be sustained. Reason requires that this rule shall be applied in case of a general demurrer." (*Amestoy* v. *Electric R. T. Co.*, 95 Cal. 314, [30 Pac. 551].) The allegation that a certain condition exists because of a certain fact necessarily carries with it the implication that the fact exists also. The other objections to the complaint are equally technical and untenable.

2. The policy provided that "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy," and it also contained the usual and familiar provision that "No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer,

agent or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.'' It is admitted that no agreement permitting the subsequent insurance nor any waiver of said provision was indorsed on said policy, and that circumstance presents the second question raised by appellant. Notwithstanding, however, the unequivocal and exacting terms of said provision, it is settled by the decisions beyond controversy that the insurer may be bound by the waiver of a general agent, although no indorsement whatever is made upon the policy.

In *Arnold* v. *American Ins. Co.*, 148 Cal. 660, [84 Pac. 182], it was held that: ''Notwithstanding a printed stipulation that any waiver must be made in writing and attached to the policy, such stipulation could not prevent the conduct of the affairs of the company from constituting a waiver or estoppel of the company, based upon its presumed knowledge, when its proper officer had knowledge, where such conduct led the insured to rely upon his policy as a valid policy, although there was a breach of condition of which the company knew, in which case it will not be heard to allege such breach against a claim for a subsequent loss.''

In *Mackintosh* v. *Agricultural Fire Ins. Co.*, 150 Cal. 440, [119 Am. St. Rep. 234, 89 Pac. 102], the rule is stated as follows: ''General agents authorized to issue and deliver new policies are regarded as having the same power to waive conditions and forfeitures as the companies themselves. The limitations embodied in the stipulation do not prevent them from making new contracts; and waivers constituting a new contract upon sufficient consideration need not be evidenced by writing nor indorsed upon the policy, if made by a general agent having power to make the contract, no matter what limitations or conditions may be expressed in the policy.'' To the same effect is *Raulet* v. *Northwestern Nat. Ins. Co.*, 157 Cal. 213, [107 Pac. 292]. See, also, 16 Am. & Eng. Ency. of Law, p. 935.

The evidence shows that the agent, Mr. Barkuloo, was clothed with authority to waive said condition and stipulation and that his conduct and declarations must be regarded as a

waiver of the same. He testified that "As agent for the Home Insurance Company I issued policies, canceled policies, indorsed policies, issued and delivered policies, solicited and wrote insurance, collected the premiums for the company, remitted them to the company, and attended to the business of the company generally." There is no evidence to the contrary. If the foregoing powers did not constitute him a general agent in that community it is difficult to conceive what additional authority is required for said purpose. "Agents authorized to issue and deliver policies are regarded as having the same power to waive conditions in policies as the company themselves, and can therefore waive conditions and forfeitures." (*Mackintosh Case,* 150 Cal. 440, [119 Am. St. Rep. 234, 89 Pac. 102].)

"It may be laid down as a general rule that an agent with general authority is an agent who is authorized to take risks and enter into contracts of insurance without consulting the company, may waive any of the conditions contained in the policy, and his knowledge of the facts contained in the risk is the knowledge of the company." (16 Am. & Eng. Ency. of Law, p. 942.)

In *Farnum* v. *Phoenix Ins. Co.,* 83 Cal. 261, [17 Am. St. Rep. 233, 23 Pac. 874], it is said: "Whether or not any particular agent has the general power of the company to make an oral contract or an oral waiver of a condition, notwithstanding the provision in the policy requires a writing, is a question of fact. (*Insurance Co.* v. *Norton,* 96 U. S. 234; *Steen* v. *Niagara Fire Ins. Co.,* 86 N. Y. 326, 42 Am. Rep. 297.) The authorities before cited show that a local agent who is clothed with general power to solicit and consummate contracts of insurance within a certain territory stands in the stead of the company, and represents its whole power to give validity to the contracts which he is authorized to execute and deliver, and to waive conditions precedent to liability by oral agreement, including the condition as to the mode of waiver of such conditions precedent. In this case, the circumstance that the company had general agents for the state located at San Francisco does not affect the question, since it conferred its whole power in regard to the policy in question upon its agent at Stockton, who appears to have received his appointment and instructions direct from the home office, in the

state of New York, and who signed himself as the direct agent of the defendant.'' The foregoing must set at rest the proposition that Barkuloo had authority to waive said condition and bind the company.

Did his conduct and declarations in reference to the said second policy of insurance amount to a waiver of said stipulation? Concerning this there can be no more doubt than of his authority to bind his principal. Philip Seaman testified that ''I told Mr. Barkuloo that we had taken out other insurance, that the other agent told me to notify him about it and to note it on the policy of the Home. I told him to attend to the matter, and he said he would and note it on their policy. At the time the Home policy was in the Bank of Anderson, and I showed him the policy of the Insurance Company of North America. I had a slip with me that Mr. Gardner gave me along with this policy. I gave it to Mr. Barkuloo and told him to note it on the policy.'' The testimony of the agent is substantially the same. Additionally, he gives the substance of the slip, which he says was in the usual form, and testifies that ''I had the policy before me at the time that I had the slip. All that I had to do to affix it to the policy was to put mucilage on the slip and stick it on the policy,'' and he admits that he simply neglected to do it.

Strictly speaking, this is probably not a waiver of the said conditions, but a case of equitable estoppel. The effect, however, is the same. The insured did everything required of them. When they took out the second policy they notified the agent of the Home Insurance Company, who promised to make the proper indorsement for his company. The insured had a right to rely upon this promise, by virtue of which they probably refrained from securing other insurance, and equity will treat that as done which ought to have been done, and not permit appellant to question it.

The rule is well settled, which is stated in the case of *Aetna Ins. Co.* v. *Eastman* (Tex. Civ. App.), 80 S. W. 255, as follows: ''When a general agent of a fire insurance company, with power to issue and deliver policies, solicit and write insurance, and otherwise to act for and on behalf of the company in the conduct of its business in a certain place, receives notice from the insured of the taking of other insurance on

property covered by a policy issued by such agent, but fails to indorse the company's consent on the policy, as required by the policy's terms to maintain its validity, and fails to make any objection to the taking of the other insurance, the company is estopped to assert a forfeiture for want of such indorsement, though the policy further provides that no agent has power to waive the provisions unless the waiver shall be written on or attached to the policy, and that no privileges affecting the insurance shall exist or be claimed by the insured unless also written or attached.''

Neither can there be any question that the evidence showing the waiver or estoppel was properly admitted. (*Arnold* v. *American Ins. Co.,* 148 Cal. 660, [84 Pac. 182] ; *Phoenix Ins. Co.* v. *Grove,* 215 Ill. 299, [74 N. E. 141].)

But it is contended by appellant that, admitting that ''one with the powers of Barkuloo could be held to be empowered to waive the provision as to other insurance in this transaction he could not be considered, and in law was not the agent of defendant, and his acts or neglect could not bind the defendant,'' for the reason that his interests and those of the defendant were conflicting by virtue of the fact that he was the vice-president, cashier and manager of the bank to which the policy was made payable. The evidence, however, shows clearly that the property insured belonged to Seaman Brothers, and that neither the Bank of Anderson nor Barkuloo had any interest therein, and appellant had knowledge of Barkuloo's relation to the bank. Said policy was made payable to the bank as collateral security for a loan of $2,000, which the bank had made to Seaman Brothers and which was amply secured by a mortgage on $10,000 worth of real estate. The evidence shows further that the company, through its general agent in San Francisco, had full knowledge of the transaction and in fact ratified it. It would seem to be just and elementary that since the insurer had knowledge of the bank's interest in the policy and of Barkuloo's position in the bank, and directed its agent, Barkuloo, to have the policy made payable to the bank in case of loss, that it cannot after loss question the authority of its own agent because of an act which it authorized and ratified. Under the facts disclosed, manifestly the insurance company may have cause for complaint against the agent, Barkuloo, but for his

dereliction the insured, free from fault and fraud, cannot be held responsible.    There is no principle at law or equity that, under such circumstances, precludes the insured from recovery.    The knowledge of the second insurance acquired by Barkuloo was acquired as the agent of the insurer, and was present in his mind at the time he made the promise to the insured, and this satisfies the requirement of the rule.    (Current Law, vol. 6, p. 127; *Foreman* v. *German All. Ins. Co.,* 104 Va. 694, [113 Am. St. Rep. 1071, 52 S. E. 337].)    It cannot be controverted that where there is an agency the company is bound as to third persons dealing with the agent in good faith as to all matters within the scope of his real or apparent authority.    (*Sellers* v. *Connecticut Fire Ins. Co.,* 105 Ala. 282, [16 South. 798].)

"A general insurance agency representing several companies with authority to act upon applications and issue policies, as well as to cancel the same in proper cases, may also act as the agent of the insured in waiving notice of cancellation and in accepting a delivery of a new policy when substituted for the one canceled."    (*Hamm Realty Co.* v. *New Hampshire Fire Ins. Co.,* 80 Minn. 139, [83 N. W. 41].)

The cases cited by appellant are distinguishable from the one at bar in the following particulars, as substantially pointed out by respondent.    In *Rockford Ins. Co.* v. *Winfield,* 57 Kan. 576, [47 Pac. 511], the banks, of which the agent of the insurance company was an officer in each, held security on the property covered by the policies of insurance, and the companies had no knowledge of this, and, besides, the question of forfeiture or waiver was not involved, the point being that the company had declined the risk.    The decision is really based upon the ground that the condition of affairs was not disclosed to the insurance company, but it is held that the agent would be authorized to write a policy even on his own property, and the company would be bound by it if fully informed of the facts and the risk was accepted.    The other cases, *Ritt* v. *Washington Marine & Fire Ins. Co.,* 41 Barb. (N. Y.) 353, *Bentley* v. *Columbia Ins. Co.,* 19 Barb. (N. Y.) 595, and *Spare* v. *Home Mutual Ins. Co.,* 19 Fed. 14, involve ownership of the property by the agent and illustrate the rule that the agent of the insurance company cannot as such agent insure himself or the corporation of which he is an

officer, shareholder or director, unless all the facts are known to the company or unless such insurance is ratified after such knowledge is acquired.

There is some intimation by appellant of fraud on the part of the insured and plaintiff in regard to said second insurance, but the suggestion finds no support in the evidence. There was apparently no attempt at concealment, and the property at the time said policy was issued far exceeded in value the amount of the two policies.

3. We think there was sufficient evidence to support the allegation of the complaint that defendant disclaimed and denied all liability under the policy, and therefore the failure to furnish proof of loss was excused. One John Ehrlich was sent by defendant to adjust the loss. As to the extent of his authority he testified: "I am an independent fire adjuster, and work for the Home of New York" and other companies. "As a loss comes along I am hired to adjust it; I go on the road and tell parties that I am adjusting for such and such a company, and it is accepted, and whenever I settle the loss the money is ready. I went to Anderson to adjust the loss of the Seaman Brothers." Philip Seaman, among other things, testified that Ehrlich said: "You know this company is not responsible for the loss on that policy." George Seaman's testimony is that Ehrlich said: "Well, I cannot do anything with this; the company is not responsible or liable for this loss. Just before we left for home on the morning train I asked Ehrlich what he was going to do about the matter, if he was going to straighten it up, and he said no, the company isn't liable. I told him their agent at Anderson had been notified of the other insurance being taken out." Barkuloo's testimony was of the same import and he added: "I was trying to persuade him (Ehrlich) that the company was responsible, and he insisted that they were not, and finally he said that he had a stipulation, I believe he called it, signed by the brothers, and it was to be taken up by the home office. He said I could take it up with them if I wasn't satisfied with his statements regarding it." We think the foregoing justifies the inference that Ehrlich disclaimed any liability on the part of the company, and from his statements the insured could reasonably conclude that any proof of loss would be unavailing, as the company would reject it. It would also

seem that his authority was broad enough to include the matter in question.   In *McCollough* v. *Home Ins. Co.*, 155 Cal. 659, [102 Pac. 814], formal proofs of loss were not made by reason of the statements of the adjuster, and the court said, page 663: "The court was fully justified in finding from this evidence that the company had waived the requirement of written and sworn proof of loss," citing cases.   Again, within the time for presenting proofs of loss, a letter was received from the general agent at San Francisco, in which expressions are found indicative of the company's purpose to resist the claim.   This letter was in answer to those written by Barkuloo in which he stated his reasons for believing the company was liable for the loss.   In the reply Barkuloo was charged as responsible for the condition of affairs, and reference is made to "this alleged claim" and the "gross negligence" of said Barkuloo as "the obstacle in the way of an adjustment." Furthermore, it is stated that "What action he (Ehrlich) took as an adjuster would necessarily have been the action of the undersigned."   While said letter is somewhat evasive, it is a fair inference from it that the company would resist the claim in any event, and it may be considered as furnishing additional assurance of the authority of Ehrlich.   There is some other correspondence between the same parties tending to the same conclusion, but we deem it unnecessary to notice it.   We cannot hold that there was no substantial evidence to support said allegation, and, of course, the rule is well settled that "Where the conduct of the company is such as to render the production or correction of proofs of loss useless or unavailing, they are deemed waived." (*Williams* v. *Hartford Ins. Co.*, 54 Cal. 442, [35 Am. Rep. 77]; 13 Am. & Eng. Ency. of Law, p. 347; *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 261, [17 Am. St. Rep. 233, 23 Pac. 874]; *Allen* v. *Phoenix Ins. Co.*, 12 Idaho, 653, [88 Pac. 245]; *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 527; Civ. Code, sec. 3522.)

This view is not inconsistent with special finding No. 11 of the jury, wherein the answer, "No," was given to the following question: "Did Seaman Brothers and said plaintiff, or either of them, fail to furnish proofs of loss of the fire to defendant as required by the policy of insurance, for the reason that said defendant, within sixty days after said fire and loss, denied and disclaimed all liability under said policy

of insurance on account of said fire and loss, and refused to adjust said loss and pay the amount of said policy?'' As pointed out by respondent, the material questions as to this were: Did the company actually deny all liability, or was there a refusal to pay, and was it apparent from the conduct and statements of the company that proofs of loss would be useless and unavailing? The jury, in said finding No. 11, did not answer these questions, but in view of the testimony of Barkuloo to the effect that he thought he had furnished proofs of loss, the jury found that these other considerations were not the reason for his failure. The jury actually did find that there was a denial by the adjuster of all liability on the part of the company, and also that the general agent at San Francisco, during the sixty-day period after the fire, denied liability and refused to adjust said loss and pay the same on the ground of the violation of the provision as to other insurance.

4. There is no merit in the contention that it was necessary for plaintiff to allege the waiver or estoppel by reason of the agreement of Barkuloo to make the necessary indorsement on the policy. The true rule is stated in *Arnold* v. *American Ins. Co.,* 148 Cal. 668, [84 Pac. 185], as follows: ''It is incumbent upon plaintiffs, in an action upon a policy of insurance, to allege the performance of conditions precedent, such as the giving of any required notice of loss, etc., and performance of all promissory warranties; but limitations, stipulations and conditions which are in the nature of conditions subsequent, and go to defeat the liability of the insurer, must be alleged in the answer, as they were in this case. To this matter so alleged in the answer, under our system of pleading, any defense by way of replication was open to plaintiff without pleading.'' Here the forfeiture was set up in the answer, and it was proper in order to meet that for the plaintiff to show the waiver or estoppel. The cases cited by appellant involved conditions precedent and not subsequent.

5. It is claimed that the court erred in instructing the jury that ''A provision of a fire insurance policy that it should be void if the insured procured other insurance without the consent of the insurer and without such consent being indorsed upon or attached to the policy is waived by failure on the part of the insurer to object or cancel the policy and return

the unearned premium, before loss by fire of the insured property, after said insurer had knowledge that other insurance had been procured.'' The contention is that the retention of premium does not waive forfeiture. It is argued that the insurer is entitled to payment of the premium as soon as the thing insured is exposed to the peril insured against (Civ. Code, sec. 2616), and that the contingency upon the happening of which the insured is entitled to a return is provided for in sections 2618 and 2619 of the Civil Code, as follows: ''If a peril insured against has existed, and the insurer has been liable for any period, however short, the insured is not entitled to return of premiums so far as that particular risk is concerned.'' ''A person is entitled to a return of the premium when the contract is voidable on account of the fraud or misrepresentation of the insurer, or on account of facts, of the existence of which the insurer was ignorant without his fault; or when by any default of the insured other than fraud, the insurer never incurred any liability under the policy.'' The argument is that by virtue of these provisions, if appellant had canceled the policy for the reason that the insured had secured other insurance, there was no obligation to return any portion of the premium, and therefore its failure to do so could not be considered as a waiver of said stipulation in the policy. The instruction is in harmony with many decisions from other jurisdictions, but granting that it required more of the insurer than the statute justifies, it is perfectly apparent that it could have done no injury to appellant. Under all the decisions and according to the familiar doctrine of equitable estoppel, to avoid a waiver under the circumstances mentioned the insurer must express its dissent in some way. It could be done manifestly by objecting or by canceling the policy and returning the premium. It was at least its duty to *object,* and since it did not do so it waived the said stipulation, and it is entirely without prejudice that the court exacted too much in the other alternative. In other words, while the instruction, abstractly considered, may be erroneous, when applied to the undisputed facts it could possibly have done no harm. Besides, the instruction may be entirely disregarded for the reason already suggested that the evidence shows without conflict that the company, through its authorized agent, promised to make the proper in-

dorsement, and this was sufficient to bind the company. The authorities probably all agree to the rule stated in Wood on Insurance, page 1102, and quoted with approval in *Kalmutz* v. *Insurance Co.*, 186 Pa. 576, [40 Atl. 817], as follows: ''Where other insurance is required to be indorsed on the policy, if notice thereof is given to the insurer or its agent, and consent is not indorsed, nor the policy canceled, further compliance is treated as waived and the insurer is estopped from setting up such other insurance to defeat its liability upon the policy, and the same is true when the same agent issued both policies; although consent is not indorsed upon either policy, yet being issued with knowledge of the facts, the insurer is treated as having waived compliance, and is estopped from setting up nonindorsement in defense. In all cases where the insurer, at the time the policy was issued, knew of other insurance, and there is no agreement for its cancellation or nonrenewal, or when notice is given that other insurance has been obtained, it is bound either to indorse consent upon the policy or cancel it, or failing to do either, it will be treated as having assented thereto.''

6. There was sufficient evidence to support all the material special findings. The answer ''Yes'' to the question: ''Was any consent in writing to said other insurance given by defendant?'' is not strictly correct, although it represents the legal effect of defendant's conduct. But it is entirely immaterial since, if answered either way, in view of the other findings as to waiver and the undisputed evidence, the general verdict must have been for plaintiff.

Many special findings were submitted to the jury, some of them complicated, and quite likely to produce confusion in the minds of the jurors. They probably answered inadvertently *No* to the following question: ''Did the defendant, with knowledge of the facts relied upon by plaintiff as a waiver of the provision as to other insurance, namely, the alleged taking of a slip to Barkuloo, the alleged notification to him of the other insurance, dispense with the condition that consent to such insurance must be indorsed in writing on said policy?'' but this plainly calls for a conclusion of law and should not prevail over the findings of fact.

7. The nonwaiver agreement signed by the insured, Seaman Brothers, cannot have the effect claimed for it by appellant.

The acts upon which plaintiff relied for a waiver of the requirement to furnish proofs of loss occurred after said agreement was executed and are not included within its terms. (*McCollough* v. *Home Ins. Co.*, 155 Cal. 659, [102 Pac. 814].)

No further specific consideration of appellant's objections is considered necessary. We think the complaint is sufficient, the cause was fairly tried, the evidence supports the findings and they in turn support the judgment, that no prejudicial error was committed and the judgment and order are therefore affirmed.

Hart, J., and Chipman, P. J., concurred.