[Civ. No. 3931.    Second Appellate District, Division One.—November 26, 1923.]

## HARRY WILLIAM ELLIOTT, Appellant, v. TITLE INSURANCE & TRUST COMPANY (a Corporation), Defendant; ARTHUR F. LEVITT, Cross-Defendant and Respondent.

[1] CONTRACTS—SALE OF LAND—STATUTE OF FRAUDS.—A contract for the sale of land is invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged.

[2] ID.—ESCROW—NECESSITY FOR BINDING CONTRACT.—Before a proposed escrow may have any validity there must be a binding contract in existence between the parties to such escrow.

[3] ID.—DEPOSIT OF BONDS WITH TITLE COMPANY—ABSENCE OF MEETING OF MINDS—SUBSEQUENT INSTRUCTIONS—LIQUIDATED DAMAGES.—Where the vendor and the vendee of certain real property orally agree that certain bonds shall be deposited with a title insurance company to be forfeited to the vendor if the sale shall not be consummated, and the bonds are so deposited, but there is no "meeting of the minds" of the parties on the question of the terms of the proposed contract of sale other than the inchoate agreement as to the forfeiture of the bonds, and thereafter the parties give new written instructions to the title company, but such instructions contain no mention of the bonds in connection with their forfeiture to the vendor as liquidated damages or otherwise, the vendor is not entitled to such bonds upon the failure of the vendee to consummate the deal.

[4] ID.—LIQUIDATED DAMAGES — INVALID CONTRACT. — Assuming that the parties had entered into a written agreement embracing all the terms of the proposed sale, and that such agreement had contained a provision evidencing the intent of the parties that the bonds should be forfeited to the vendor upon the failure of the vendee to consummate the deal, under sections 1670 and 1671 of the Civil Code such provision for liquidated damages could not be enforced in the absence of pleading and proof that "from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

[5] ID.—RENTAL VALUE OF LAND — EVIDENCE — INVALID PROVISION.— Assuming that there was a contract between the parties and that the intention was that the bonds were to be considered as rent for the use of the property in the event the sale was not completed, under sections 1670 and 1671 of the Civil Code such provision would not be enforceable, as it would have been a compara-

tively easy matter, after the termination of the transaction by the vendor, following the failure of the vendee to consummate the deal, to determine what was the value of the use of the land while it was occupied by the vendee.

APPEAL from a judgment of the Superior Court of Los Angeles County.  John M. York, Judge.  Reversed.

The facts are stated in the opinion of the court.

Harry William Elliott, *in pro. per.,* and Gerald F. H. Delamer for Appellant.

Ward Chapman and L. M. Chapman for Respondent.

HOUSER, J.—Early in the month of July, 1920, as a result of oral negotiations between W. J. Conner and Arthur F. Levitt regarding the sale of certain real property, the latter, in an attempt to create an escrow agreement between him and Conner, deposited certain instructions with the Title Insurance & Trust Company.  No action having been taken thereon by Conner, either by way of written acceptance or by filing independent instructions with the Title Company, on August 24, 1920, Levitt canceled the instructions which had theretofore been given by him.  Two days later—that is, on August 26, 1920—a conference was held between Levitt, Conner, and J. Moores Jones, as a result of which, and on the same day, Levitt gave new instructions to the Title Company, which were followed four days later by Conner's instructions to the same company.  Pending the negotiations between Levitt and Conner, it appears that Conner had taken physical possession of a part of the property and had erected some temporary structures thereon which were used by Conner in making some moving pictures.  At the conference on August 26, 1920, it was orally agreed between Levitt and Conner (and to which Jones assented) that Conner would deposit with the Title Company two Liberty bonds of five hundred dollars each to cover any damages that theretofore might have been or might thereafter be caused by Conner's use and occupation of the property, to be forfeited to Levitt as liquidated damages in case the sale were not finally consummated.  Accordingly the two bonds were so deposited.  Aside from a possible understand-

ing of the parties, as shown by their respective written instructions as to the forfeiture to Levitt of the two Liberty bonds in case of the failure to carry the sale to completion, there was no "meeting of the minds" of the contracting parties on any other essential part of the proposed agreement; and during the month of September, 1920, Levitt gave to the Title Company several instructions, the effect of each of which was to cancel the transaction. On October 15, 1920, the parties held a second conference at which they agreed to "wipe the slate clean and start again"—immediately following which Conner gave written orders to the Title Company to cancel the prior instructions. Consequently new written instructions to the Title Company were signed by each of the parties. These new instructions, while referring to the Liberty bonds as figuring in the transaction in the way of part compensation for the property proposed to be conveyed, contained no mention of them in connection with their forfeiture to Levitt as liquidated damages or otherwise. The terms of these instructions (and being the only ones on which the parties had agreed in *writing*) not having been carried out, on April 14, 1921, Levitt again caused the transaction to be canceled. It appears in evidence that the two Liberty bonds deposited by Conner were not his property, but that, unknown to Levitt, they belonged to J. Moores Jones, who was present at the conference on August 26th, and assented to their deposit with the Title Company, and which bonds were agreed to be and were deposited with the Title Company to be forfeited to Levitt in the event that no sale was finally consummated. On December 17, 1920, Jones assigned and transferred whatever interest he had in the two bonds to the plaintiff herein. After the final cancellation of the matter, plaintiff brought an action in claim and delivery against the Title Company for the two bonds. The Title Company interpleaded Levitt and Conner. From a judgment in favor of Levitt both plaintiff and Conner have filed separate appeals; but as Conner has failed to perfect his appeal, this court is concerned only with the appeal of plaintiff.

[1] That a contract for the sale of land is invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged is settled not only by statute (Civ. Code, sec. 1624), but as well by a long line

of decisions.    **[2]**    It is equally well established in this state that before a proposed escrow may have any validity there must be a binding contract in existence between the parties to such escrow. (*Fitch* v. *Bunch*, 30 Cal. 209; *Miller* v. *Sears*, 91 Cal. 282 [25 Am. St. Rep. 176, 27 Pac. 589]; *Holland* v. *McCarthy*, 173 Cal. 597 [160 Pac. 1069]; *Thomas* v. *Birch*, 178 Cal. 489 [173 Pac. 1102].)

**[3]**    Tested by such rules it is clear that, in view of the fact that no valid contract for the sale of the land ever had been entered into between the parties, no valid escrow ever existed between them.    At the time the parties orally agreed that the bonds in question should be deposited with the Title Company, to be forfeited to Levitt if the sale should not be consummated, Levitt was the only one who had even attempted to create an escrow; and after such oral forfeiture agreement came into existence and the deposit of such bonds with the Title Company there was no "meeting of the minds" of the parties on the question of the terms of the proposed contract of sale of the property, or otherwise than an inchoate agreement as to the forfeiture of the bonds to Levitt in case the deal was not completed.    Neither was there any valid contract for the sale of the land in existence between the parties at the time the final instructions were signed by them.    But even if a valid contract had been operative at that time, such instructions were silent as to any forfeiture of the bonds; and such instructions being the only instrument which contained any agreement in writing between the parties which under any circumstances might be considered as binding upon them, under the rule that all prior oral negotiations were merged in the written document, the agreement which they both signed is conclusive and must be the measure of the rights of the respective parties with reference to the ownership of the bonds.    **[4]**    But considering the existence of a legal foundation for the escrow as being established and, in addition thereto, that the instructions, documents, etc., composing the attempted escrow, were sufficient in form to warrant the conclusion that a forfeiture of the bonds was provided therein, as against such forfeiture becoming effective, another insuperable obstacle exists in Civil Code sections 1670 and 1671, where the law is laid down that "every contract by which the amount of damage to be paid, or other com-

pensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except" that "the parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

There was neither pleading by either of the parties nor finding by the court which would bring the case within the exception of the statute. Moreover, the adjudicated cases of this state are to the effect that in circumstances such as are shown by the facts of this case a contract which provides for liquidated damages is void. In the case of *Eva* v. *McMahon*, 77 Cal. 467 [19 Pac. 872], the facts as stated by the court were: "On the fifteenth day of August, 1883, the defendant sold and conveyed to the plaintiff a tract of land in Contra Costa County, described as containing about two hundred acres. On the same day, defendants executed and delivered to plaintiff an agreement called 'Exhibit A,' by which it was stipulated that they might remain in possession of the premises until the first day of October, 1883, and that if they should fail or neglect to surrender to the plaintiff the possession of the described premises on that day, then they would pay to him all costs, charges, and expenses to which he might be put to gain such possession including a reasonable attorney fee, and would also pay the further sum of two hundred dollars per month for such time as plaintiff might be deprived of or prevented from gaining possession of the premises, by reason of any act or thing done, suffered, or committed by the defendants while in possession thereof." The court said: "From these facts the court found as a conclusion of law: 'That from the nature of the case it was neither impracticable nor difficult to fix the actual damages which would arise from the failure of either of the parties interested to perform any of the terms or conditions of the contract on their part to be performed, and for that reason that part of the stipulation contained in Exhibit A providing for damages for the breach of other provisions therein contained is void.' This conclusion is in accord with the provisions of sections 1670 and 1671 of the Civil Code, and if warranted by the facts, is decisive of the case. It is assailed by appellant, but we think it must be sustained.

We see no difficulty in fixing the actual damages which one sustains by being deprived of the use of the land to which he is entitled. Ordinarily the damage is the value of the use and occupation of the land for the time he is deprived of its possession. (Civ. Code, sec. 3334.) There are exceptions to this rule, provided for in other sections of the code, but they do not affect the result. Here the plaintiff has sustained no damage at all, and it would seem to violate all rules of honesty and fair dealing to allow him to take from the defendants the large sum claimed." And see, also, *Easton* v. *Cressey*, 100 Cal. 75 [34 Pac. 622]; *Drew* v. *Pedlar*, 87 Cal. 443 [22 Am. St. Rep. 257, 25 Pac. 749].

[5] It is contended by respondent that the bonds were not to be taken as a forfeiture for failure on the part of Conner to carry the deal through to completion, but that they were to be considered as rental for the property. It is true that one of the witnesses did state that the bonds were to be "put up to cover any damages that might have been done to the land," and that another witness testified that during the negotiations he "volunteered the statement that if Mr. Conner would pay Mr. Levitt a sufficient amount of money to compensate him for the use of his property in the event the escrow did not go through, that we would reopen the escrow"; but in every other of the many references to the matter—in the testimony of witnesses, as well as in the pleadings, the instructions to the Title Company, and even in the findings by the court—the subject is treated as liquidated damages and as a forfeiture for failure on the part of Conner to consummate the sale. But even assuming as against the law and the facts that there was a contract between the parties and that the intention was that the bonds were to be considered as rent for the use of the property in the event the sale was not completed, under the rule laid down in the case of *Eva* v. *McMahon*, 77 Cal. 467 [19 Pac. 872], Levitt would not be entitled to recover the bonds. After the final cancellation of the transaction by Levitt on April 14, 1921, it would have been a comparatively easy matter to determine what was the value of the use of the property for the time it had been occupied by Conner; but to attempt to determine in advance what it was worth in a lump sum when the time the property would be occupied by Conner was wholly uncertain and prob-

lematical, demonstrates that the intention was to provide for a penalty rather than for actual reasonable compensation. To paraphrase the language of the statute (Civ. Code, sec. 1671), from the nature of the case it would have been neither impracticable nor extremely difficult to fix the actual damage.

From the foregoing it follows that the appeal of W. J. Conner should be dismissed and the judgment should be reversed. It is so ordered.

Conrey, P. J., and Curtis, J., concurred.