[Civ. No. 7586.   Third Dist.   Aug. 22, 1949.]

EDWARD MYERS et al., Respondents, v. MARGARET GARAVENTA, Appellant.

Huberty & Huberty for Appellant.

Mull & Pierce and Arthur DeBeau Carr for Respondents.

ADAMS, P. J.—On October 31, 1944, Margaret Garaventa was the owner and operator of a tavern at Mokelumne Hill in Calaveras County known as "Peek Inn." On that date she entered into three contracts of sale with Edward Myers and Gladys L. Myers which are in effect but one, wherein she agreed to sell, and Mr. and Mrs. Myers agreed to buy: (a) the real property upon which the tavern was located, together with improvements thereon, for $7,000; (b) all the vendor's stock of liquor, beer, wines and other stock in trade, approximating in value $3,000; and (c) the tavern business including the good will as a going concern, the fixtures, and all contracts, engagements, benefits and advantages in respect thereto, including the liquor license, for $5,000, a total of $15,000. It was also provided that time was of the essence of the contract, and the usual forfeiture clauses were set forth, but section 16 provided: "Ten days shall be considered a reasonable time after notice to retake and if the buyer tenders to seller the full amount, due, owing and unpaid after notice of retaking by the seller, seller shall execute proper instruments vesting title in buyer."

The buyers made down payments amounting to $3,600, and went into possession of the tavern. Under the contract they

were to pay $500 per month, and payments in addition to the $3,600, amounting to $2,100, were made, and though not made on the due dates no objections to the delays were made by the seller. On the contrary, she willingly gave extensions, stating that the buyers were to make payments when they could. However, on June 14, 1945, Mrs. Garaventa, without having at any time expressed dissatisfaction with the course of affairs, served upon plaintiffs a notice of rescission of the contract. Two days later plaintiffs tendered to her the full amount due, and when same was refused deposited the money in escrow and thereafter maintained the deposit.

Plaintiffs then brought this action for specific performance, which was decreed by the trial court. That court found that payments amounting to $5,700 had been made by plaintiffs, and that defendant accepted them without objections; that immediately after the execution of the contract she expressly stated to the Myers that they need not worry about making prompt payments and that she would not exact any forfeiture if they unavoidably became unable to perform on time; and that thereafter, until June 16, 1945, she repeatedly stated to plaintiffs that she would not take advantage of the provisions of the contract or attempt forfeiture thereunder, and that at no time prior to June 16, 1945, did she give notice of, or state that she would insist upon, strict performance of the agreement. It further found that on or about June 16, 1945, plaintiffs found a purchaser for the property for $20,918.92, and entered into a contract with him for sale of same, and that such contract was made with the express consent of defendant who stated that she would take no advantage of plaintiffs on account of such sale, and that in reliance upon her statements plaintiffs gave possession to the purchaser, Otis B. Coen, and accepted from him a payment of $3,418.92, and transferred to him title to the personal property. Also it was found that plaintiffs paid upon the installments due for the months of March and April, 1945, the sum of $300 each, and that the failure to pay the balances of $200 was expressly excused by Mrs. Garaventa. It was recited in said findings that plaintiffs had failed but had not neglected nor refused to pay any installment or any interest or insurance, but that failure to pay was excused by defendant by her acts and conduct which lulled plaintiffs into a sense of security. As for some small alterations in the premises which Mrs. Garaventa complains of, they were made with her knowledge and consent.

The trial judge filed a written opinion in the case

which was included in the record on appeal. Therein he stated, regarding the evidence:

"The plaintiffs desired to purchase it. They had limited means of which defendant was undoubtedly aware. The contract of sale was expressed in rigid terms but at the very time of the execution the defendant stated to them that she would not be severe in enforcing its terms. The plaintiff took possession of the property and apparently cared for and conducted it properly. They committed no waste were not indifferent or negligent in the conduct of the business and so far as appears paid to the defendant all that they could from the conduct of the business. The parties rapidly became friends and the most cordial relations existed between them up to the very day of the notice of forfeiture.

"There was no act which the defendant claims to have been an act of breach and forfeiture of which she was not aware and of which she made no complaint. Payments made to her which were less than the amount due she received with a friendly acceptance. She discussed with plaintiffs the state of their business and of the promise of an increased patronage. Doing the best they could apparently they were lulled into a sense of approval by the acts of the defendant. They had paid to her on account of the contract a large sum of money, which suddenly for actions of which she had at the time approved, she sought to take from them."

He also called attention to section 16 of the agreement of sale, stating that the buyers had conformed thereto by tendering to the seller the full amount due; and that plaintiffs had "two supports for a favorable judgment. By their tender they have cured their defaults, and through the waivers of the defendant their forfeitures have been excused."

Those conclusions seem well supported by the evidence which shows that up to the time that plaintiffs secured a buyer for the premises, at a price in excess of that charged by Mrs. Garaventa, plaintiffs and said defendant had been on terms of intimate friendliness, and that defendant had repeatedly told plaintiffs to pay when they could; that she had been aware of some bad luck which plaintiffs had suffered, particularly the suspension of their liquor license for 30 days for some alleged irregularity, which suspension deprived them of income for such period.

As the trial court heard the testimony and saw the witnesses we cannot say that its conclusions were not well founded.

Plaintiffs' tender was adequate, and their sale to the Coens had been approved by defendant. It cannot be said that their defaults were grossly negligent, or wilful, or a fraudulent breach of duty. There is also section 16 of the contract which provides that if a tender of the full amount due, owing and unpaid is made within 10 days after notice of retaking by the seller, the seller shall execute proper instruments vesting title in the buyer; and in this case such tender was made within the time specified.

Appellant makes some argument that the price of the property was to be $18,000 instead of $15,000, if there was not full compliance with the provisions of the agreement, and that the tender was, therefore, insufficient. The contract provided: "Thus as set out in the agreement above referred to that the overall purchase price of building, stock, and fixtures and good will shall be Fifteen Thousand ($15,000.00) Dollars provided all the terms, conditions, and covenants herein and therein contained are properly and timely performed, but if they are not, then it is and is herein declared to be the agreement that purchaser buying this real property and only this real property must pay and will pay a total of Ten Thousand ($10,000.00) Dollars exclusive of interest." Also: "Although it is known to all parties and understood as such that the overall purchase price of the tavern business and fixtures and chattels as set out in this agreement, the stock of liquor now on hand by seller, and the building itself . . . is Fifteen Thousand ($15,000.00) Dollars only if, as and when this contract and the contract for the purchase of said real property have been carried out in their entirety and if default is made in said contract of purchase of the real property notwithstanding the provisions of this contract buyer covenants herein and agrees that the purchase price is Eighteen Thousand ($18,000.00) Dollars for the said stock, fixtures, and real property so that any deficiency will be calculated on a total purchase price of all three in the amount of Eighteen Thousand ($18,000.00) Dollars."

On her motion for a new trial appellant urged that the overall price of the property was to be $18,000, and $15,000 was to be the reduced price only if the buyers performed all of the conditions of the contract; but the trial court, in an opinion then rendered, stated that there seemed to be no proper relationship between the difference of $3,000 and any damage which would result to defendant in case of breach; that the general rule in cases of breach of a contract is

that such damages are allowed as will compensate the party aggrieved for all detriment proximately caused thereby (Civ. Code, § 3300); and that the contract apparently provided for a different and arbitrary one inconsistent with sections 1670 and 1671 of the Civil Code. Those sections provide that every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except that the parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage. The court said that no such difficulty existed here.

We agree with that conclusion. The additional sum of $3,000 appears to bear no relationship to the damage which the seller would suffer from breach of the agreement, but to have been fixed rather as a penalty unrelated to actual damages which might be suffered, which damages could have been compensated for by the payment of interest on the amounts in default. (See *Eva* v. *McMahon,* 77 Cal. 467, 472 [19 P. 872]; *Drew* v. *Pedlar,* 87 Cal. 443, 450 [25 P. 749, 22 Am.St. Rep. 257]; *Stephens* v. *Daugherty,* 33 Cal.App. 733, 737 [166 P. 375]; *Elliott* v. *Title Insurance & Trust Co.,* 64 Cal.App. 508, 513-514 [222 P. 175]; 8 Cal.Jur. 844, 847, 849; 1 Restatement of Law of Contracts, § 339, p. 552, and com., subsec. (1).)

Appellant also urges that the court erred in excusing plaintiffs' nonperformance since such excuses were not pleaded, but, on the contrary, the complaint alleged that plaintiffs had made all of the payments on account of the purchase price of the property and had well and truly performed all of the terms and conditions except that they had not paid $9,739, but had made timely tender of said sum to defendant. Appellant points out some of the conditions of the contract which called for consent of the seller in writing, before any changes or modifications were permissible, and that plaintiffs had made changes without written consent. She relies upon cases holding that a complaint must either allege performance or a valid excuse for nonperformance, that recovery on proof of excuse for nonperformance cannot be had on an allegation of full performance; and that a like rule applies to waiver of the terms of an agreement when waiver is relied upon by a party.

However, it may be said in this case that section 16 of the contract provided that by tender of the amount due, the buy-

ers' defaults were cured, and that evidence of excuses for nonperformance and waiver by defendant was introduced without objection by defendant; and the case was tried apparently on the theory that same was admissible. Also respondents rely upon cases holding that affirmative matters by way of replication are deemed to have been pleaded, and that defendant's answer in this case opened the door for evidence of waiver and permitted the showing of same in order to overcome such affirmative matters. (See 21 Cal.Jur. § 113, pp. 165-166; *Bank of Anderson* v. *Home Insurance Co.*, 14 Cal.App. 208 [111 P. 507]; Code Civ. Proc., § 462.)

The trial court, in its opinion, stated that in an action to enforce the performance of a contract a plaintiff may, as was done here, allege full performance where, after notice of forfeiture, he had made a tender of full performance which was denied, citing *Hind* v. *Oriental Products Co., Inc.*, 195 Cal. 655, 670 [235 P. 438].

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.

A petition for a rehearing was denied September 19, 1949, and appellant's petition for a hearing by the Supreme Court was denied October 20, 1949.