### GREAT AMERICAN INS. CO. v. FARMERS' WAREHOUSE CO.

No. 11261—Opinion Filed June 26, 1923.

**1. Corporations—Defunct—Powers — Right to Sue.**

A corporation that has been declared to be defunct, inoperative, and dead by the proper authorities of the state cannot bring

or maintain an action in its corporate name, and when a suit is brought in the corporate name of the plaintiff and it develops at the trial that its charter has been revoked and its powers as a corporation have ceased, it is error to enter judgment in its favor.

**2. Insurance—Dual Agency—Effect on Contracts.**

A man cannot be the agent of both parties to a transaction, and where the agent of an insurance company writes a fire policy covering property of a corporation in which he is a stockholder, director, and secretary and treasurer, without the knowledge or consent of the insurance company, such policy is void under the rule that a man cannot serve two masters.

**3. Corporation—Corporate Existence—Collateral Attack.**

Where a corporation sues in its corporate name, and defendant denies plaintiff's corporate existence and offers evidence to show that plaintiff's corporate powers have been revoked, held not a collateral attack.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Farmers' Warehouse Company against Great American Insurance Company on fire policy. Judgment for plaintiff, and defendant brings error. Reversed.

This is an action brought by the Farmers' Warehouse Company, a corporation, against Great American Insurance Company, a corporation, on an insurance policy purported to have been executed by the German American Insurance Company, a corporation, in the sum of $6,000, covering loss by fire on cotton in bales owned and held by plaintiff in trust, or on commission, or on joint account for others, or sold but not delivered, while contained in Farmers' Warehouse at Stonewall, Okla., for the term of two months from the 7th day of March, 1919, to the 7th day of May, 1919. It is alleged in the petition that a fire occurred on the 23rd day of March, 1919, and that there was cotton stored in said warehouse belonging to various farmers of the total value of $7,267.50, and plaintiff prays judgment for the sum of $6,000, with six per cent. interest from March 23rd until paid.

The defendant answered fully by general denial and by a specific denial, alleging that the plaintiff had no legal capacity to sue, and avers that the plaintiff was not a corporation at the time of bringing this action, and is not now a corporation. Defendant admits that its name is the Great American

Insurance Company and that it is a corporation; that its name was formerly German American Insurance Company of New York; admits that the warehouse of plaintiff was destroyed by fire on the 23rd day of March, 1919; and admits that its attorney wrote the letter of the date of May 28, 1919, set out at page 4 of said amended petition; and admits that it refused to make payment to plaintiff by reason of the pretended policy set out in its amended petition by reason of said loss by fire therein mentioned; and admits that the parties mentioned in said amended petition had cotton stored in said warehouse at the time of said fire.

Defendant further answers that W. P. Rives was its agent at Stonewall, Okla., and specifically denies that it ever received $40,50 premium for said policy, or any other sum as premium; and denies that said pretended policy set out in plaintiff's amended petition was ever delivered to plaintiff; and alleges that no premium was ever paid therefore, and that no such policy was ever in force or effect, and denies liability thereon; that it never received any notice from said W. P. Rives that said pretended policy was ever issued, or that any premium had ever been paid to him therefor; and alleges that at the time said pretended policy is alleged to have been issued by said W. P. Rives, who was the agent of defendant at its Stonewall, Okla., agency, and who it is claimed issued the policy upon which suit is brought; that said W. P. Rives was a stockholder and owner of a part of the capital stock of the plaintiff, Farmers' Warehouse Company; that he was one of the incorporaters and subscribed the charter, and that at the date of said pretended policy was a director in said Farmers' Warehouse Company and was its secretary and treasurer; that of these things the said W. P. Rives did not advise the defendant, and defendant did not give its consent to the issuance of said policy, and had no notice that such policy was issued until after the bringing of this action; and that by reason of said W. P. Rives being one of the incorporators, and one of the parties who subscribed the charter, and being a stockholder in said Farmers' Warehouse Company, and an owner of its capital stock at the time said pretended policy purported to have been issued, he was interested in having a policy issued to it because of his interest as a stockholder in said company, and issued the policy and transacted the business with reference thereto for his own benefit and in his own interest, and not for the benefit and interest of the defendant. All of which the

plaintiff had full knowledge, and without notice or knowledge or consent of defendant, and that by reason thereof said pretended policy was null and void; that defendant has in no manner ratified the acts of W. P. Rives, and has never admitted the validity of said policy, and has at all times denied any liability thereon, and has in no way waived its defense thereto, and that by reason thereof no action can be maintained against this defendant upon said void policy by reason of the said loss by fire.

Plaintiff replied by way of general denial, and also set up in its reply certain specific denials, and says that if W. P. Rives was the agent of defendant for the purpose of writing insurance and the agent of the plaintiff at all, was its agent for entirely different and distinct purposes, and that if the said Rives was the agent for the defendant for writing insurance and the agent of the plaintiff for a different and distinct purpose, there was no conflict in his duty, and that such dual agency does not void the policy written by said agent, and that the rule that one cannot serve two masters does not apply when loyalty to one involves no breach of duty to the other; and further alleges in reply that the plaintiff was in no way beneficially interested in the cotton covered by said policy as it was merely the custodian thereof, and that the real owners of said cotton covered by said policy were the several farmers named in the petition, and that plaintiff not being beneficially interested in the fact that said agent of defendant was interested in this plaintiff would in no way militate against the validity of said policy.

Defendant filed a motion for judgment on the pleadings, and also objected to the introduction of any testimony. Both motions were overruled by the court and the defendant excepted, and the case proceeded to trial before the court and jury, and the plaintiff called as a witness, J. C. Walker, president of the Farmers' Warehouse Company of Stonewall. This witness testified that he did not know there was a policy issued and never saw it until something like a week after the fire when it was found in the bank with Mr. Rives' papers; that the company had never paid the premium on the policy, and never notified the company that they had taken this policy of insurance from any of the defendant's agents; that Rives was one of the stockholders, and secretary and treasurer, and a director of the company at the time said policy was written, and at the time the fire occurred. Witness then identified the warehouse receipts for the cotton in storage at the time of the fire.

At the close of plaintiff's testimony, the defendant demurred to the evidence, which demurrer was overruled and defendant excepted. Defendant also moved for a peremptory instruction in favor of defendant, which motion was overruled and defendant excepted. The defendant introduced John C. Ingram, who was one of the managers of the Great American Insurance Compay, with offices in the city of Chicago, Ill., who testified that they had supervision of all business of the company in Oklahoma, and that W. P. Rives was their agent in charge of their business at Stonewall during the year 1919; that it was Rives' duty to report to them the issuance of all policies and certificates, and that he was the member of said defendant company, who had charge of the reports of policies issued at Stonewall, Okla.; that the Great American Insurance Company did not know of the issuance of the certificate sued on, and never heard of it until after the fire; that he had never received any notice or report of the issuance of such certificate; that Rives never reported any such certificate, and that they never received the sum of $40.50 premium on said policy, or any other sum; that they knew nothing about such policy being issued until sometime after the fire when their adjuster reported it to them, and reported the fact that Rives was a stockholder and an officer of the Farmers' Warehouse Company. The defendant then introduced certain certified copies of documents in the office of the Secretary of State and the Corporation Commission to show that the Farmers' Warehouse Company had had its charter revoked. Among which documents was the following:

"Whereas, the Farmers' Warehouse Company of Stonewall, a corporation, having failed for a period of two years prior to May 20, 1918, to pay the annual state corporation license tax or fees, or to make any report required by chapter 72, Revised Laws of Oklahoma, 1910, and the Corporation Commission having caused to be published the notice required in such cases by Chapter 146, section 2, of Session Laws of Oklahoma, 1917, and proof thereof having been filed as required by said section, and the Secretary of State having been notified thereof, and proper notation in red ink opposite the name of said corporation having been made indicating the status of said defunct and inoperative corporation in the corporation index books in his office by the Secretary of State, as required by said section 2; whereas, said corporation has not applied for reinstatement within six months from the date of such notification to the Secretary of State, as required by said section.

"Now therefore, I, the undersigned, Secretary of State of Oklahoma, pursuant to

section 2 of chapter 146 of Session Laws of Oklahoma, 1917, and by virtue of the power and authority in me vested, do declare said corporation, the Farmers' Warehouse Company of Stonewall. to be defunct and inoperative and legally dead and cause this record of the Secretary of State to so indicate. Done this 2nd day of January, 1920.

"Joe E. Morris, Secretary of State."

At the close of this testimony, defendant filed a motion for a directed verdict, which was overruled by the court; and thereupon the court directed the jury to return a verdict for the plaintiff and against the defendant in the sum of $5,283.22, with interest at six per cent. from July 25, 1919, and costs, to which defendant excepted and filed its motion for a new trial which was overruled, and also filed a motion for judgment non obstante veredicto. This motion was overruled and defendant excepted and asked for an extension of time to prepare and serve case-made, which was duly served, settled, and signed, and the case appealed to this court.

Geo. B. Rittenhouse (Gordon Stater and P. T. McVey, of counsel), for plaintiff in error.

Robert S. Kerr and J. F. McKeel, for defendant in error.

Opinion by MAXEY, C. There are three controlling questions to be decided in this case:

(1) Was the plaintiff, at the time of the commencement of this suit, a corporation and entitled to do business as a corporation?

(2) Was the policy sued on ever issued and delivered and the premium paid so as to make it a binding obligation?

(3) Did the fact that Rives was a stockholder and an officer in the plaintiff corporation make him such an interested party that he could not act as the agent of the defendant insurance company in issuing the policy sued on?

The fire in this case occurred on the 23rd day of March, 1919. The evidence introduced by defendant in this case shows that on the 20th day of May, 1918, the Corporation Commission had a notice published in the Ada Weekly News printed in Ada, Pontotoc county, Okla., being the same county in which the plaintiff, Farmers' Warehouse Company, was located. On July 13th, the editor of said paper made affidavit of publication showing publication. On the 16th day of December, 1918, said Farmers' Warehouse Company was notified by the Corporation Commission that it had failed to pay for a period of two years the state cor-

poration license tax, or to make any report, as required by statute, and notified said warehouse company that publication had been made, as required by law, of its delinquency, and notified said warehouse company in order that they might comply with the statute in such case made and provided; but said warehouse company did not pay any attention to this notice, and it was carried on the books of the corporation commission, as a delinquent corporation, and was defunct and inoperative pending the time given by statute for it to reinstate and become an active corporation again. Not having complied with the statute, the Secretary of State, on January 2, 1920, issued his order declaring the Farmers' Warehouse Company of Stonewall to be defunct and inoperative and legally dead. A copy of said order is set out in the statement of this case. This case was tried on the 22nd day of January, 1920, just 20 days after the final order set out in the statement of this opinion declaring said Farmers' Warehouse Company to be defunct, inoperative, and legally dead. It is not necessary for us to decide whether the plaintiff, Farmers' Warehouse Company, had such a corporate existence as to entitle it to bring this suit in its own name and we do not decide that question, but we hold that the order of the Secretary of State, issued 20 days before the trial of this case declaring said corporation defunct, inoperative, and dead, had the effect of abating the suit. Possibly the suit might have been revived by proper proceedings, but the plaintiff did not seek to have it revived, and so far as the record shows it has been absolutely inoperative and dead since the 2nd day of January, 1920. Section 7547, Rev. Laws 1910, as amended by chapter 46, Session Laws of 1917, provides, among other things, that:

"In addition to other penalties provided in this act, if any corporation has failed or hereafter shall fail for a period of two (2) years, to pay the annual state corporation license tax, or to make any report required by chapter 72, Revised Laws 1910, the Corporation Commission shall prepare a list of such corporations and shall publish the same in this state in a newspaper of general circulation in the county where the principal office of the company is located, for a period of three successive issues. And, upon said publication being completed, a proof of publication being filed thereof, with Corporation Commission by such newspaper, such corporation shall thereupon be deemed defunct and inoperative and no longer competent to transact business within the state of Oklahoma; and no notification of such status by the Corporation Commission shall be necessary, and the Secretary of State shall make proper notations in red ink opposite the

name of any such corporation in the corporation index books of his office, indicating the status of such defunct and inoperative corporations: Provided, that any such defunct corporations, upon the payment of all such delinquent taxes and fees, shall thereupon become reinstated, revived and operative again: Provided, further, that when such reinstatement is not applied for within six months from the date of such notification to the Secretary of State such defunct and inoperative corporation shall became legally dead and the records of the Secretary of State and Corporation Commission made to so indicate."

It will be observed that this amendatory act adds new penalties for a corporation failing to comply with the law, etc. A legally dead, defunct, and inoperative corporation can no more institute or prosecute an action, or recover a judgment in an action, than can a dead man. Thereafter, after a corporation has become legally dead, its power to sue in its corporate name or maintain an action and recover judgment in its corporate name, no longer exists except in so far as such power is expressly continued by statute. As a general proposition, a corporation's power to sue in its corporate name or maintain a suit already commenced is effectually extinguished by the order of the Secretary of State, heretofore quoted. Thereafter it can maintain no action to enforce rights acquired during the life of its charter unless its capacity in this respect has been continued by the provision of its charter, or by statute. In the case of Eagle Chair Co. v. Kellsey, 23 Kan. 632, it is held:

"When a corporation has been legally dissolved, by expiration of the time limited for its continuance by the terms of its charter or articles of incorporation, during the pendency of an action in the name of the corporation, held not error for the trial court, in its discretion, and in furtherance of justice, to refuse to enter judgment on a verdict in favor of the extinct corporation, and to set aside the verdict and grant a new trial, upon the payment of all costs by the defendants, although the existence of the corporation is not raised in the pleadings, and the expiration of the charter is proved by documentary testimony offered in behalf of the corporation."

In the case of McRea v. Kansas City Piano Co. (Kan.) 77 Pac. 94, we quote from the body of the opinion as follows:

"The dissolution of a corporation operates as to it the same as the death of an individual. All its powers, prerogatives and authority—its life—ceased. All legal proceedings then pending were at once suspended. At the common law this termination of corporate powers became so radical that a corporate debtor was entirely discharged of his obligation, and all actions by or against it were at once and forever abated; not even an execution on a judgment theretofore obtained could issue. Am. & Eng. Enc. (2 Ed.) vol. 9, p. 603; 10 Cyc. 1310. It is only in virtue of some statute authorizing it, or some principle of equity requiring it, that these results may be avoided, or pending proceedings may be further prosecuted, or judgments already rendered enforced."

In the case of Imperial Film Exchange v. General Film Co., 244 Fed. 985, the court held that the dissolution of the corporation is equivalent to the death of a natural person, citing numerous decisions. There is nothing in our statute that authorizes a defunct corporation to bring any action nor is there any power given that authorizes it to continue an action brought before it became defunct, but all power to bring or prosecute actions for the interest of a defunct corporation is vested in trustees. Numerous cases can be cited from the different states sustaining the contention that the plaintiff in this suit, Farmers' Warehouse Company, cannot maintain this action, and we might end this opinion here, but there are other questions involved that we think the parties are entitled to have passed on.

Second and third propositions considered together: It appears that the policy sued on in this case was written by W. P. Rives, who was a stockholder, director, and secretary and treasurer of the Farmers' Warehouse Company; that he was also the local agent of the defendant insurance company; that the president, Mr. Walker, nor any of the other officers of the warehouse company had any knowledge that a policy had been issued, and did not know of the existence of the policy sued on until some days after the fire, when it was found among Rives' papers in his desk. Rives disappeared right after the fire for some reason which is not disclosed by the record further than the testimony of Mr. Walker, who said he had not seen him or heard from him since he disappeared, although he had endeavored to locate him. Mr. Walker, the president of the company, admitted that he knew nothing of the policy having been issued until it was found in Rives' desk; that there was no record of any premium ever having been paid and so far as he knew none was ever paid. There is an old maxim, as old as Holy Writ, that a man cannot serve two masters; and our law books are full of cases holding that a man cannot act for two parties where they are both interested. We cite the following case from our own court. In Evans v. Brown, 33 Okla. 323, 125 Pac. 469, the court

states the rule as follows:

"No principle is better settled than that a man cannot be the agent of both the seller and the buyer in the same transaction, without the intelligent consent of both. Loyalty to his trust is the most important duty which the agent owes to his principal. Reliance upon his integrity, fidelity and ability is the main consideration in the selection of agents; and so careful is the law in guarding this fiduciary relation that it will not allow an agent to act for himself and his principal, nor to act for two principals on opposite sides of the same transaction. In such cases the amount of consideration, the absence of undue advantage, and other like features are wholly immaterial. Nothing will defeat the principal's right of remedy, except his own confirmation, after full knowledge of all the facts. Actual injury is not the principle upon which the law holds such transactions voidable. The chief object of the principle is not to compel restitution where actual fraud has been committed, or adjust advantages gained, but it is to prevent the agent from putting himself in a position in which to be honest must be a strain on him and to elevate him to a position where he cannot be tempted to betray his principal."

Kerr on Insurance (section 79, page 165), states the rule as follows:

"An agent cannot bind his principal by acts in his own favor. The acts of an agent who represents both insurer and insured in the insuring of property are not binding on his principals unless ratified by them. An agent of an insurer who makes application to it for insurance on his own property, directly or indirectly for his own benefit, is acting for himself, and his acts or knowledge do not bind his principal. An insurance company is not liable on a policy written by an agent for the company on property pledged to banks of which such agent was president or cashier, where the risk was declined by the company for other reasons than the agent's interest in the property, of which fact the company was not informed, although the insured was not notified of such refusal until after the property was destroyed, where she knew of such agent's interest in the property. But the fact that an insurance agent who issued a policy in a school district, was at the same time director of the district, will not avoid the policy, where the president, who was selected for that purpose, acted for the district in the matter and the agent did not. But one who is a mere guard or watchman over property and also the agent of an insurance company, may, at the request of the owner, write a valid policy of insurance on such property in the company of which he is such agent."

In the case of Arispe Mercantile Co. v. Capital Ins. Co. (Iowa) 110 N. W. 593, the syllabus is as follows:

"Insurance — Powers of Agent — Insuring Agent's Property—Validity of Policy. Where the recording agent of an insurance company, who, as such agent, issued a fire policy, was one of the incorporators of insured, and at the date of the policy was a member of its governing body, did not advise the insurer of these facts or obtain its consent to insure the property, and it had no notice of the facts, the policy is void, under the principle that one cannot as agent transact business for his own benefit, though the agent acts in good faith, and the contract is fair and equitable."

In this case, at the close of the evidence, the court sustained a motion for an instructed verdict in favor of the defendant insurance company, and we quote from the opinion the following:

"* * * The motion was sustained upon the following grounds: * * * 3. That the defendant's agent who issued the policy was a stockholder, treasurer, and director of the plaintiff company, of which fact the defendant was entirely ignorant, and that said agent did not disclose his relation to the plaintiff company, nor procure defendant's consent to the issuance of said policy, thereby effecting a legal fraud upon the defendant, and rendering the policy void.

"The ruling on this motion could not, in our judgment, be sustained upon either the first or second ground assigned therefor. As to the third ground, we feel constrained to say that the ruling was correct. The facts are not in dispute. At the date of the policy the plaintiff was a corporation doing business in Arispe. Of this corporation, D. W. Stevenson (the insurance agent) was a director, and was at the same time serving as its treasurer. He was also cashier and stockholder of a bank which held stock in the plaintiff company, and was at the same time recording agent of the defendant insurance company, and as such issued the policy in suit. Stevenson denied he owned any stock in the plaintiff company, but it appears without dispute that he was one of the incorporators of the concern and a member of its governing body. He held these relations to the parties at the time he issued the policy, and there is no claim that he advised the insurance company of the facts or obtained its consent to insure property in which he was then personally interested. Under the prevailing rules of the law of agency we are compelled to hold that a policy thus issued without notice to or consent of the company creates no enforceable liability. The practically universal holding of the courts is that such an unauthorized act of the agent violates the general principle that an agent cannot be permitted to put himself in a position where his own interests are antagonistic to those of his principal, and cannot as agent for his principal do or transact business for his own benefit."

We could multiply cases on this proposition—nearly every state in the Union has passed on this question, and they universally hold that an agent cannot represent both parties to a transaction in which he is interested, but we deem the foregoing citation sufficient for the purpose of this case and we hold that if Rives did in fact write up this policy before he absconded, and left it in his desk and no premium was paid, the fact that he was acting as agent of the warehouse company and also of the insurance company rendered the policy void and a recovery cannot be had thereon.

There is one other point discussed that we do not deem material and that is, plaintiff contends that that part of defense set up in defendant's answer which raises the question of the existence of plaintiff warehouse company as a corporation is a collateral attack. To this contention we cannot agree. Here is a corporation, at least it alleges that it is a corporation, and brings the suit as a corporation. It is not a collateral attack to deny that it has an existence as a corporation, but it is a substantial defense which the defendant has a perfect right to interpose, and if the evidence establishes the fact that it is not a corporation, then the plaintiff must fail in his action and it is not a collateral but a direct attack on the corporate existence of the company; and as heretofore shown, the evidence in this case conclusively shows that the plaintiff, Farmers' Warehouse Company, had become defunct and inoperative prior to the judgment in this case, and that plaintiff is not entitled to recover. There are other errors assigned, but inasmuch as what we have said disposes of the case, we deem it unnecessary to notice them. The trial court committed error in directing a verdict for the plaintiff, Farmers' Warehouse Company, and for that and other reasons herein stated, the judgment of the trial court is reversed, with directions to dismiss the case.

By the Court: It is so ordered.