## THOMPSON v. MARTIN.

No. 19271. Opinion Filed Sept. 17, 1929.

A. E. Pearson, Warren H. Edwards, and Hal Houston, for plaintiff in error.

Oscar C. Simpson, for defendant in error.

FOSTER, C. Thankful J. Martin, defendant in error here and plaintiff in the court below, began this action on June 30, 1927, to recover upon a promissory note, payable on demand, in the sum of $750, together with interest and an attorney's fee, executed July 2, 1920, by W. J. Thompson, payable to R. W. Martin. This note was afterwards indorsed to the plaintiff, Thankful J. Martin. It also showed by indorsement certain credits.

As an answer, the defendant, W. J. Thompson, admitted the execution of the note, pleaded payment of same, denied the indorsement of credits which appear thereon, denied that plaintiff was the owner of same, and pleaded the statute of limitations.

At the close of plaintiff's testimony, the defendant demurred on the ground that the evidence disclosed that the action was barred by the statute of limitations, and at the close of all the testimony, the defendant re-quested an instructed verdict, both of which were overruled, and the jury returned a verdict for the plaintiff, from which the defendant appeals.

According to the evidence of the plaintiff, the note sued upon was executed for a good and valuable consideration, paid by the plaintiff and her husband, R. W. Martin, to the defendant; that prior to the said R. W. Martin's death, which was in 1927, he assigned the note to her and duly indorsed his name upon the back thereof. This note was introduced in evidence, and shows certain payments indorsed thereon, as follows: February 19, 1925, $50; December, 1925, $30; and March 3, 1926, $50. According to plaintiff's testimony, the first two credits which appear upon the note were made by her, in her own handwriting, at the request of the defendant; that the money represented by the payments was the result of a sale of some cattle by R. W. Martin belonging to him and defendant, and that these payments represented defendant's part of the sale; that defendant asked R. W. Martin to give him credit upon this particular note, and that this plaintiff, in the presence of the defendant and her husband, R. W. Martin, wrote the first two indorsements as above set out; that the other payment of $50, in December, 1926, is in her husband's handwriting, but she does not know of her own knowledge that this payment was made.

Plaintiff admitted, however, that she and her husband gave a note to the defendant in 1922, after the note sued upon here was due, and that in 1927, after the death of her husband and a short time before the commencement of this action, she and her son executed a note in the sum of $200, payable to this defendant, which note was introduced in evidence. She explains the execution of the last note mentioned, however, by saying that she had demanded payment of the note sued upon, and that the defendant told her he was short of money, and asked her to execute this $200 note so that he could have it placed in a bank, and then he would give her the $200 and when the note became due he would pay the $200 note, and it could be applied as a payment on the note sued upon.

Defendant denied any such understanding between him and the plaintiff, and testified that while he executed the note, the same had been fully paid to R. W. Martin in the year 1920; that the note sued upon was executed because of the fact that he and R. W. Martin were jointly engaged in the buying and selling of cattle; that the cat-

tle were purchased by Martin in his name, but for their joint interest; that when Martin would purchase cattle from the commission company, he, W. J. Thompson, would execute a note payable to Martin, and that Martin would deposit this note, together with the mortgage on the cattle as security for the payment of the same, and that, after the cattle were sold, they would settle their differences and divide the losses or profits; that, under these conditions, this note was executed, and soon after the execution of the same, the cattle for which this note was given as security were sold, and that the defendant paid R. W. Martin his part of the profits, which included the payment of the note, and that he exhibited to the jury certain checks which he testified were in full payment of this note, the checks being issued in June and September, 1920.

The defendant also testified that he never made any of the payments on the note as shown by the indorsements; that he never discussed the note with Mrs. Martin at any time until just a short time before the commencement of this action; that at that time Mrs. Martin was in jail in El Reno and asked this defendant to go upon her bond, and he refused, and she then said she would bring suit upon the note. He explained the reason he failed to get possession of the note at the time he paid it was due to the fact that often when they made settlements, Mr. Martin would not be in possession of the notes, and that he would afterwards deliver same to the defendant, and that in the case at bar R. W. Martin never delivered the note to him, although it was fully paid. Plaintiff, however, testified that she talked to Mr. Thompson several times about the payment of this note after the death of her husband, and that, although he each time acknowledged that he owed it, he continually refused to pay it.

The testimony introduced by plaintiff and defendant is in almost direct conflict. The jury, however, returned a verdict in favor of the plaintiff for the sum of $1,255.77, the same being the full amount sued for. The instructions of the trial court were not objected to and are not questioned on appeal.

The contentions of the defendant for a reversal of this case are argued in his brief under three propositions, in substance, as following: First. That action on the note is barred by the statute of limitations. Second. That the verdict is not supported by the testimony. Third. That the court erred in overruling the motion for a new trial.

In support of defendant's first proposition, as above set out, he contends that, in order to toll the statute of limitations, the payment on a promissory note must be voluntarily made, and that this presumes an acknowledgment of the indebtedness and a promise to pay in the future. His contention in support of this proposition is based upon the well-recognized rule in this state that the application by the holder of a note of the proceeds of the sale of securities hypothecated at the time of the making of the note, does not toll the statute of limitations. Nor does the application of funds held in a bank, without the knowledge, consent, or approval of the payee of the note, have the effect of tolling the statute. Berry v. Oklahoma State Bank, 50 Okla. 484, 151 Pac. 210; Shawnee Nat. Bank v. Marler, 106 Okla. 71, 233 Pac. 207.

This line of cases is well recognized in this state, but has no application to the facts presented by this appeal. The testimony of the plaintiff is to the effect that the defendant told plaintiff's husband, in her presence, to credit a certain sum belonging to him in the hands of her husband, R. W. Martin, upon the note, and that pursuant to that request, and in the defendant's presence, this plaintiff personally credited the said sum upon the note. If this testimony is true, it seems to us that there could be no question but what this is a voluntary payment and had the effect of tolling the statute.

This action having commenced within five years after the payments were made upon the note in the manner as above set out, we believe is amply sufficient to bring the case within the extension as provided by section 191, Comp. Stat. Okla. 1921.

It is next contended by the defendant that there is no evidence reasonably tending to support the verdict. This contention is based upon the testimony of the plaintiff herself, which the defendant claims is so absolutely unbelievable and unreasonable that it amounts to no testimony at all. Recognizing the universally followed rule that, if there is any evidence reasonably tending to support the verdict, the case will not be reversed, the plaintiff says that because of the fact that Mrs. Martin admitted that after the note sued upon herein was due, she and her husband executed another note payable to the defendant, and that after the death of R. W. Martin, she and her son executed a note payable to the defendant, knowing all the time—if it be a fact—that the defendant was indebted to her on the note sued upon herein, under these circum-

140

stances, her testimony is so unreasonable and out of accord with human experience, that she should not be believed, and this cause should be reversed because there is no testimony reasonably tending to support the verdict.

As above indicated, Mrs. Martin attempts to explain her action in executing the note given to the defendant after her husband's death. We are unable to say that this explanation is entirely out of all reason and unbelievable. The jury evidently believed her explanation, and we think under the circumstances they had a right to do so.

There is some testimony to show that plaintiff became angry at defendant because he refused to sign an appearance bond while she was in jail. But the jury found in favor of the plaintiff, and we believe there is testimony reasonably tending to support said verdict. The trial court, who also had an opportunity to see the witnesses and hear their testimony, approved the verdict. We think, clearly the same should be sustained.

The next and last contention of the defendant is that the court erred in overruling the motion for a new trial because of certain alleged newly discovered testimony, which is shown by affidavits attached to the motion for a new trial. These affidavits are made by three or four persons who were acquainted with R. W. Martin and had business transactions with him any times after the alleged execution of the note sued upon and before his death, some of the transactions taking place a short time before R. W. Martin's death. They allege that R. W. Martin admitted that the defendant, W. J. Thompson, had loaned him money many times during the years from 1920 to 1927; that he often borrowed money from Mr. Thompson, and that he furnished him money to conduct his business dealings, and that R. W. Martin never intimated in any way that W. J. Thompson was indebted to him on the note sued upon herein, or for any other reason. One of these affidavits is made by Mr. Riddle, president of the National Livestock Commission Company, who apparently had many transactions with the receased, R. W. Martin, and the makers of the other affidavits also seemed to be quite familiar with his business affairs, having many transactions with him.

The motion for a new trial based upon this alleged newly discovered evidence simply states that the defendant could not, with reasonable diligence, have discovered and produced at the trial this evidence relied upon. No facts or circumstances are stated in the motion for a new trial, or in the affidavits themselves, showing why this testimony could not with reasonable diligence have been produced at the time of the trial.

It is well settled in this jurisdiction that a motion for a new trial on the ground of newly discovered evidence must meet at least six requirements: (1) That the testimony be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; and (6) it must not be to merely impeach or contradict the former evidence. Poynter v. Beacon Falls Rubber Co., 115 Okla. 245, 242 Pac. 563, and other cases.

It is too well settled to need the citation of authorities, that a motion for a new trial is addressed to the sound discretion of the trial court, and in the absence of abuse of such discretion, this action will not be disturbed on appeal.

From a careful examination of the motion for a new trial, and the evidence setting out the alleged newly discovered evidence, we doubt if any one of the six requirements was complied with in the motion for a new trial. However, it is clear from the motion for a new trial that there was no evidence showing that the alleged newly discovered evidence could not have been ascertained before the trial by the use of reasonable diligence. It appears to be well settled in this jurisdiction that a mere statement in the motion for a new trial that the evidence could not have been discovered by the exercise of due diligence is insufficient in the absence of any testimony to that effect. Burns v. Vaught, 27 Okla. 711, 113 Pac. 906; Flersheim Merc. Co. v. Gillespie, 14 Okla. 143, 77 Pac. 183.

We think, clearly, that the court did not abuse its discretion in overruling the motion for a new trial. The judgment of the trial court is therefore affirmed.

BENNETT, LEACH. REID, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.