# HOME INSURANCE CO. OF NEW YORK v. SOUTHERN MOTOR COACH CORP.

No. 23777.    Feb. 12, 1935.

Rehearing Denied March 12, 1935.

Rittenhouse, Webster & Rittenhouse, for plaintiff in error.

L. H. Harrell, Denver N. Davison, A. M. Kerr, and Dennis H. Petty, for defendant in error.

WELCH, J. This is an appeal from the district court of Pontotoc county. Plaintiff in error, the Home Insurance Company, a corporation, was defendant in the trial court, and the defendant in error, Southern Motor Coach Corporation, was plaintiff. The parties will be referred to as they appeared in the trial court.

Plaintiff brought suit to recover upon a fire insurance policy for a fire loss on one of its motor busses.

The Ebey-McCauley Company, of Ada, was a policy writing agent for the defendant, and for various other fire insurance companies. Mr. Ebey of that firm handled the transactions material here.

The plaintiff operated a fleet of busses for the transportation of passengers, having one of its terminals at Ada, where the business affairs of the corporation were principally handled. One W. W. Walden was president and active manager.

For some months prior to the fire loss Ebey had been actively soliciting the fire insurance business of the plaintiff corporation. He contacted Mr. Walden on numerous occasions, offering his services and advice to plaintiff regarding its insurance matters, and its insurance policies, which prior to that time had been procured through agencies at other points. Mr. Ebey at his own suggestion checked those policies and volunteered, without charge, to procure needed corrections in some of them, and to obtain certain refunds of unearned premiums on some of plaintiff's policies which had been canceled. Some correspondence was necessary in these matters, which at Ebey's suggestion was conducted by him, but in the name of the plaintiff company upon its own stationery. The correspondence was so handled to avoid any ill feeling that might attend the use of the name of the Ebey-McCauley Company in dealing with other insurance agents. The testimony clearly discloses that as these various services were performed by Ebey, Walden came to rely to some extent upon Ebey's advice and assistance in his insurance matters, and from time to time and as various policies expired or were canceled, Walden procured new policies to be written through Mr. Ebey until at the time this loss occurred the Ebey-McCauley agency carried a great deal, if not the bulk or all, of plaintiff's insurance. In fact, Mr. Walden and Mr. Ebey both testified that at such a time Mr. Walden was relying upon Mr. Ebey to keep plaintiff's various properties properly insured, and he had been authorized by Walden to accept cancellation of policies.

As policies were written the plaintiff corporation would be charged for the premium on the books of Ebey's firm, and from time to time the plaintiff corporation would be furnished a statement and would remit accordingly. Ebey remitted to his several companies for the premiums collected on policies issued through the agency, less commissions retained by him, at fixed dates in the usual and customary manner, and as instructed by his companies.

On October 27, 1930, Ebey received a letter from another insurance company, which he also represented, notifying him of the cancellation of certain policies which Ebey had written covering properties belonging to the plaintiff corporation. The property here involved was covered by one of such policies. On October 28, 1930, Ebey advised his secretary that such policies were being canceled and that they would give the risk to, or rewrite the insurance with, or in the defendant insurance company. At that time he made a pencil note on the bottom of the notice of cancellation to rewrite the policies with the defendant insurance company, and gave this to his secretary with instructions to prepare the policies. Several policies were involved, and the secretary completed the writing of a number of these policies, among them being the one upon which suit is brought, but not having completed all of the policies involved on that day, she left all of them on her desk for final completion the following day. None of the policies were signed by Ebey-McCauley Company.

About midnight of that same night, Oc-

tober 28, 1930, the property here involved, and which, was included in one of the policies written by the secretary. but not yet signed by Mr. Ebey, was damaged or destroyed by fire. Nothing further was done toward completing and signing the policies, but they were preserved as left on the afternoon of October 28th.

Upon trial in the district court, plaintiff recovered judgment for $1,101.30, and defendant has appealed.

One of the propositions which the defendant urges for reversal is that the alleged contract of insurance is wholly void and unenforceable for the reason that at the time the policy was issued, or attempted to be issued, Ebey was acting or attempting to act, both as the agent of the insurance company and of the Southern Motor Coach Corporation, without the knowledge or acquiescence of the defendant insurance company.

Our examination of the authorities cited by the parties, and of additional authorities, leads us to the conclusion that the facts disclosed by this record fail to bring this case within the rule which the defendant contends should be applied. It is conceded by the parties that Ebey was fully authorized by the plaintiff to accept cancellation of policies in its behalf, and to write and issue such policies of insurance as would be necessary from time to time to carry out plaintiff's plan to keep its properties properly insured at all times. It therefore follows that Ebey was to some extent the agent for both the plaintiff and the defendant, in so far at least as the performance of certain acts was concerned. Fraud is not suggested nor alleged nor proven in this case. The defendant relies upon the general rule relating to dual agency, which in some cases renders the contract sought to be created voidable at the option of either of the parties as a matter of law and upon grounds of public policy.

That rule is based upon the theory that the same agent may not act for two principals in a transaction when their interests are in conflict one with the other, unless there is knowledge or consent thereto by the principals.

That general rule is noticed in Holy Writ, see Luke xvi, 13; and has been recognized by court decisions and text-writers; see Great American Insurance Co. v. Farmers Warehouse Co., 91 Okla. 118, 217 P. 208; 32 C. J. 1055, section 130; 21 R. C. L. 827, par. 11; Evans v. Brown, 33 Okla. 323, 125 P. 469; Aetna Ins. Co. v. Richey (Tex.) 206 S. W. 383; Muncey et ux. v. Security Insurance Co. (Idaho) 252 P. 870; Weatherholt v. National Liberty Ins. Co. (Ky.) 265 S. W. 311; Mamis v. Pruden (Ga.) 88 S. E. 967; Rockford Insurance Co. v. Winfield (Kan.) 47 P. 511; Arispe Mercantile Co. v. Queen Insurance Co. (Iowa) 120 N. W. 122; Empire State Insurance Co. v. American Central Insurance Co., 138 N. Y. 446, 34 N. E. 200; British American Assurance Co. v. Cooper (Colo.) 40 P. 147; Spare v. Home Mutual Ins. Co., 19 F. 14; Zimmermann v. Dwelling House Ins. Co. (Mich.) 68 N. W. 215; vol. 1, May on Insurance (4th Ed.), section 125; Greenwood Ice & Coal Co. v. Georgia Home Ins. Co. (Miss.) 17 So. 83; Salene v. Queen City Fire Insurance Co. (Ore.) 116 P. 1114.

It is to be observed from the authorities that the rule is only applied in cases where the facts disclose adverse interests, or where the facts are such as to require a presumption of law that the adverse interest does exist.

That a person may act in the capacity of agent for both parties where there is no conflict of interests in the doing of the several things which is expected by his respective principals, has been recognized by this court in the case of Insurance Company of North America v. Burton et al., 147 Okla. 112, 294 P. 796, the first syllabus of which we quote as follows:

"Section 6723, C. O. S. 1921, providing that any person who shall solicit and procure an application for insurance, in all matters relating to such application and the policy issued in consequence thereof, shall be regarded as the agent of the insurer and not the insured, does not preclude such person from acting as the agent of insured in certain particulars, and in a proper case."

In the body of the opinion this court quoted with approval the following rule from 22 Cyc. 1445:

" 'But the same person may act for different purposes as agent of the different parties to the contract so that for one purpose he may be the agent for the insured, although, as to the procuring of the insurance, he also represents the company.' "

To the same effect is Georgia Home Insurance Co. v. Choctaw Cotton Oil Co., 153 Okla. 194, 5 P. (2d) 152. In 32 C. J. page 1055, paragraph 130, after stating the general rule in matters of dual agency. the text continues as follows:

"* * * This general rule, however, is subject to some exceptions. The same person may act for the different principals in separate matters in which their interests

are not conflicting and his duties not inconsistent; he may be both an insurance agent and an insurance broker; and at different times act in both capacities; he may be the agent for insured, although as to the procuring of the insurance he also represents the company."

Our examination of the authorities discloses that the dual agency rule which renders contracts voidable upon the grounds of public policy, has been applied only in cases where the facts disclose that the person assuming to act as such agent had a direct pecuniary interest in the subject-matter, or occupied a direct fiduciary relation toward the principal which would strongly induce or imply an improper motive for the action taken. In the case of Great American Insurance Company v. Farmers Warehouse Co., supra, the insurance agent was a stockholder, director, secretary and treasurer of the Farmers Warehouse Company, which owned the insured property. In Muncey et ux. v. Security Insurance Co., supra, the rule is applied where the insurance agent seeks to insure his own property; the same is true of Weatherholt v. National Liberty Ins. Co., supra. In the case of Rockford Insurance Co. v. Winfield, supra, the insurance agent was the cashier of a bank which was interested in the property insured. In Arispe Mercantile Co. v. Queen Insurance Co., supra, the insurance agent was a stockholder and otherwise interested as the cashier of the bank owning the insured property. In such cases it is observed that the insurance agent was pecuniarily interested in the property insured, and that condition is found to exist in most of the cases which have come to our attention.

In Ramspeck v. Pattillo (Ga.) 30 S. E. 962, cited by the defendant, we observe that the insurance agent was employed by the property owner for a valuable consideration, and agreed, for compensation, to keep the insured's property covered by insurance. That, and some other cases, disclose a condition where the insurance agent owed a clear duty to the insured which the court construed to amount to a conflict of interests, bringing the cases within the dual agency rule.

We find no authorities which have extended the rule beyond the point necessary to obtain the desired result and to satisfy the reasons for the rule.

In the instant case the evidence is uncontradicted that Ebey was not interested as a stockholder in the plaintiff corporation, nor was he employed by it for any consideration to be paid by it, nor did he owe it any duty in procuring insurance on its property. Everything that the plaintiff corporation permitted or authorized Ebey to do was done at the request and suggestion of Ebey, and in furtherance of his purpose to obtain plaintiff's insurance business, and to procure the writing of its policies. This was what Ebey was employed to do by the defendant insurance company. He did no act or performed no service for the plaintiff corporation inconsistent with the customary method of soliciting and obtaining insurance business to be written in the companies which he represented.

We find no evidence in the record that discloses any conflict of interest such as is found in the cases where the dual agency rule as considered here has been applied. Ebey would have sustained no property loss had he failed or refused to insure the property here involved. The only disadvantage he would suffer if he refused to insure the property, or any of the plaintiff's properties, would have been his failure to obtain plaintiff's insurance business, with the corresponding loss of his percentage of the premiums, and this potential loss is so remote and so disconnected as to fall far short of the conflict of interest referred to in the authorities which we have examined.

The defendant in its brief gives some attention to the question of whether or not the policy herein sued upon was in fact ever issued, or whether under the circumstances here a contract was ever consummated between the parties, aside from the dual agency question above considered. It is our opinion that the facts here are sufficient to show the completion of the contract under the authority of McCracken v. Travelers Insurance Company of Hartford, Conn., 57 Okla. 284, 156 P. 640; DeNoya v. Fidelity Pheonix Insurance Co., 110 Okla. 235, 237 P. 125; and Massachussetts Bonding & Insurance Co. v. Vance, 74 Okla. 261, 180 P. 693. Therein this court recognized the principle that the actual final writing and delivery of the policy of insurance is not essential to the validity of the contract.

The next question presented by the defendant is stated as follows:

"That this action is maintainable only in the names of the Southern Motor Coach Corporation, L. A. Nance and B. D. Denton, jointly, and the trial court erred in overruling defendant's demurrer to plaintiff's petition, its exception to the introduction of plaintiff's evidence, its demurrer to

plaintiff's evidence, and its motion for a directed verdict."

L. A. Nance and B. D. Denton were not made parties plaintiff. The suit is brought in the name of the Southern Motor Coach Corporation only as party plaintiff. The written portion of the petition makes no reference to any interest claimed by L. A. Nance and B. D. Denton, although the copy of the policy which is attached to plaintiff's petition and made a part thereof contains the following clause:

"Subject to all the provisions, exclusions, conditions and warranties contained in this policy. loss, if any, payable, as interest may appear, to assured and L. A. Nance and B. D. Denton, or assigns."

The defendant's demurrer, the only pleading which in any way called the court's attention to the alleged defects of parties plaintiff, was filed May 2, 1931. The second ground of such demurrer is quoted as follows: "2. That there is a defect of parties plaintiff." This demurrer was overruled by the court on May 13, 1931. On May 30, 1931, the following instrument was filed in the cause:

"In the District Court of Pontotoc County, Oklahoma.

"Southern Motor Coach Corporation, Plaintiff, v. Home Insurance Company, Defendant. No. 11011.

"Assignment.

"Come now L. A. Nance and B. D. Denton and respectfully show that they are the parties named in the loss payable clause in the insurance policy being sued on herein and that they are entitled to receive any payments made by virtue of and under the terms of the policy of insurance sued on herein to satisfy certain indebtedness due from plaintiff to said L. A. Nance and B. D. Denton by virtue of a certain contract entered into by and between B. D. Denton and L. A. Nance and W. W. Walden, on January 7, 1930, and which contract was assigned by said W. W. Walden to plaintiff herein, which contract was filed in the office of the county clerk of Pontotoc county, Okla., as a chattel mortgage on January 29, 1930, and is numbered 822, and on which contract there is still due the sum of $17,000.

"That for and in consideration of $1 and other valuable consideration hereby acknowledged to have been received, we, L. A. Nance and·B. D. Denton, do hereby sell, transfer, convey, set over and assign to W. W. Walden all our right, title, and interest in and to any and all of the proceeds payable under and by virtue of the insurance policy sued on herein, and we hereby authorize said W. W. Walden to act in our place and in our stead in obtaining said

money and to do all the things necessary to obtain the same in accordance with the loss payable clause obtained in said policy sued on herein.

"Executed and delivered this 29th day of May, 1931.

"L. A. Nance,
"B. D. Denton.

"Subscribed and sworn to before me this 29th day of May, 1931.
"Seal        Maurine Stubblefield, Notary
                       Public."

The defendant's answer was not filed until June 3, 1931. The answer did not in any way raise the question of any defect of parties plaintiff. The cause was tried on October 20, 1931, and at no time, place, or manner was the court's attention specifically called to any alleged defect of parties plaintiff other than the above-quoted portion of the defendant's demurrer to plaintiff's petition. The record here shows that W. W. Walden was president and general manager of the plaintiff corporation, and was present at the trial as one of plaintiff's chief witnesses. It is to be observed from the instrument filed in the cause designated "assignment" that any interest which L. A. Nance and B. D. Denton may have had in the insured property was by virtue of contract between themselves and W. W. Walden treated as a chattel mortgage, which contract had been assigned by Walden to the plaintiff corporation. It is to be observed, further, that the said L. A. Nance and B. D. Denton, by such instrument, released any and all of their right in and to such insurance to W. W. Walden.

We can conceive of no reason for the execution of such "assignment" by Nance and Denton, except that it be for the purpose of indicating that they neither had nor claimed any rights or interest in the matter, or for the purpose of extinguishing their right to claim any portion of the proceeds of the insurance policy sued upon herein, and it appears that such assignment was effective for such purpose. The instrument was captioned the same as the petition herein, and referred to this suit, and was filed in this cause. We can assign no reason therefore other than the purpose of W. W. Walden, the president and general manager of plaintiff corporation, to thereby disclose that such assignment was taken for the benefit of plaintiff corporation, and for the purpose of assuring the defendant that Nance and Denton had or claimed no interest in the proceeds of the policy. No reason appears for the drawing of this assignment to W. W. Walden, unless it be that it was

inadvertently so drawn, due to the fact that the contract under which Nance and Denton might have claimed was originally made with W. W. Walden. It seems beyond question that this assignment, or release, or relinquishment, was executed, taken, and handled throughout for the benefit of the plaintiff corporation. The instrument was caused to be filed in this case, and the filing of same herein could serve no purpose, in our opinion, other than as an effort on the part of plaintiff to amend or clarify its petition. The entire record in the case indicates that the court and the parties so construed it. The apparent effort on the part of plaintiff to correct its petition in so far as it may have been defective as to parties plaintiff was not challenged by further motion, demurrer, or answer on the part of the defendant.

At the time of the filing of this assignment the plaintiff had authority to amend its petition. Hocker v. Rackley, 90 Okla. 83, 216 P. 151.

We do not commend the form of pleading employed by plaintiff, but from the record here the conclusion is inescapable that at a period of time before the defendant filed its answer, the pleadings, filed by plaintiff, on their face, construed liberally, did not disclose a defect of parties plaintiff, Although it may be said that the pleadings at that time would be subject to some clarification, it is reasonably apparent therefrom that plaintiff thereby attempted to convey to the defendant the information that it had procured through its president a release of any interest which Nance and Denton may have claimed in the proceeds of the policy. If the defendant had been apprehensive of the form of the assignment and of any possible outstanding interest of other parties, it might have raised the question by further specific motions or pleadings.

Under the circumstances here, it is not shown that any of the alleged errors of the court in its ruling with regard to the parties plaintiff have probably resulted in a miscarriage of justice, or that they constitute any substantial violation of a constitutional or statutory right possessed by the defendant. We cannot conceive of any possibility of Nance or Denton being able to prevail in a future claim against the defendant, in the face of the instrument executed by them, nor can we believe that Walden could be heard to lay a future claim to any of the proceeds of this policy, in view of the fact that he was the assignor of the contract embodying the chattel mort-

gage, the president and general manager of plaintiff corporation, was present at the trial in the management of plaintiff's affairs, and in view of the form and contents of the assignment. The circumstances of the taking thereof and the filing of same in this cause, would certainly estop him from asserting any further personal claim against the defendant.

Under the circumstances of this case the alleged errors of the trial, if they be errors, were harmless under the rule stated in Gearhardt et al. v. Moulder, 85 Okla. 200, 205 P. 141.

The defendant complains of instructions to the jury numbered one and two. This complaint is based purely upon the defendant's contention as to the correct rule of law with regard to dual agency, which we have already fully discussed and determined in this opinion. Inasmuch as we have reached a conclusion adverse to the defendant's contention in that regard, it would serve no useful purpose to consider these instruments in detail here. The instructions given are in conformity with the rules herein announced.

Finding no reversible error, the cause is affirmed.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.