## STORRIE COAL CO. v. McALESTER FUEL CO.

### No. 1929.

Circuit Court of Appeals, Tenth Circuit.
Jan. 16, 1940.

Bower Broaddus, of Muskogee, Okl. (Hiram F. Lively, Edward P. Dougherty, and Fred H. Alexander, all of Dallas, Tex., and Julian B. Fite, of Muskogee, Okl., on the brief), for appellant.

A. James Gordon, of McAlester, Okl., and Eugene P. Locke, of Dallas, Tex. (Locke, Locke, Stroud & Randolph, of Dallas, Tex., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

On May 28th, 1937, McAlester Fuel Company, hereinafter called plaintiff, filed this suit against Storrie Coal Company, hereinafter called defendant, to recover on a promissory note of $20,000, dated June 27, 1930, and due January 1, 1931, and to foreclose a mortgage covering certain coal-bearing land. It was alleged in the complaint that a payment had been made on such note on September 30, 1932, and that the balance due was $11,129.57. Defendant alleged by answer that it did not make any payment on September 30, 1932, or at any

other time, and that plaintiff had been guilty of laches in the enforcement of such note, in that more than five years had elapsed since it was alleged to have been executed or to have become due. The court found that defendant owned the land described in the mortgage; that it leased such land to Milby & Dow Coal & Mining Company, hereinafter called the mining company, for the mining and production of coal; that under the lease certain royalties—a minimum of $500 per month—were to be paid defendant; that H. C. Rice was the treasurer of the defendant and also the manager and treasurer of the mining company; that plaintiff acted as wholesale broker for the mining company in the sale of the coal mined; that as coal was sold plaintiff would credit the mining company with the fixed price thereof, after deducting therefrom the royalty which the mining company was obligated to pay defendant, and credit the amount thus deducted to the defendant; that a note signed by the mining company, payable to Milby & Dow Mercantile Company, and endorsed by the payee to the order of defendant, was deposited with plaintiff as collateral security for the note in suit; that plaintiff paid to defendant the money loaned and evidenced by the note sued upon as follows, June 28, $5,000, July 9, $7500, August 15, $3,500, and August 27, $4,000; that the loan was initially placed upon the books of plaintiff on July 11, in the sum of $20,000; that on July 7, the mining company wrote a letter to plaintiff in which reference was made to the note in suit and authorizing, requesting, and directing plaintiff to deduct from the first amounts due for coal furnished after July 1, the royalties due and payable to defendant, and to continue doing so until the note was paid in full; that appended to such letter was a communication directed to plaintiff and signed by defendant, authorizing, requesting, and directing the application of all such royalties to the payment of the note until it was paid in full; that twenty-one credits of sums representing royalties due defendant were made on the note, the first being dated August 27, 1930, and the last September 30, 1932; that appropriate entries were made on the books of plaintiff and like entries on the books of defendant, the books of the two corresponding; that from February, 1931, until May, 1934, the president of plaintiff was receiver of the mining company, and during such time Rice was employed by the receiver; that after the execution of the letter of July 7, the matter of the application of such royalties was discussed at different times by the officials of plaintiff and Rice, both while he was treasurer and manager of the mining company and while he was employed by the receiver; and that Rice remained treasurer of defendant at all times material hereto. Concluding that such credits constituted voluntary payments and that the action was not barred by the statutes of limitation, the court entered judgment for plaintiff. Defendant appealed.

The making of the loan, and the execution and delivery of the note and mortgage are not disputed. Neither is the amount in controversy. The question presented is whether the note is barred by the statutes of limitation. Section 101, Oklahoma Statutes 1931, 12 Okl.St.Ann. § 95, provides that a civil action upon any contract, agreement or promise in writing shall be brought within five years after the cause of action shall have accrued, and not afterwards. Section 107, 12 Okl.St.Ann. § 101, provides that when any part of the principal or interest on such a contract shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, the suit may be brought within five years thereafter, but that such acknowledgment or promise must be in writing, signed by the party to be charged thereby. In order to toll the statute by payment, the payment must be voluntary and under such circumstances as to warrant a clear inference that the debtor recognizes the existence of the debt. First State Bank of Loco v. Lucas, 168 Okl. 406, 33 P.2d 622; James v. Wingate, 179 Okl. 224, 65 P.2d 452. The application of the proceeds of a mortgage foreclosure or the proceeds of the sale of securities hypothecated at the time of the making of the loan to payment of the note fails to toll the statute for the reason that it does not constitute a new promise or a new acknowledgment of the indebtedness, but is merely the enforcement of the original obligation and promise. In other words, an agreement made at the inception of the debt and the execution of the mortgage or other security therefor as a part of the transaction is not enough to toll the statute. Berry v. Oklahoma State Bank, 50 Okl. 484, 151 P. 210, L.R.A.1916A, 731; James v. Wingate, supra.

Seeking to invoke the rule just referred to, defendant urges that the court erred in failing to find that the note, the

mortgage, and the letter directing application of the royalties to payment of the note and the approval thereof by defendant, were each a part of the same transaction. It will be noted that the letter was written ten days after the execution and delivery of the note. It is true that only $5,000 of the money loaned had been paid defendant but the full amount was available immediately upon the execution of the instruments, and it was paid as needed by defendant. No useful purpose would be served by detailing at length the evidence bearing upon the question. It is enough to say that we have reviewed it with care, and that it fails to support the contention. Instead, it indicates clearly and convincingly that the writing and delivery of the letter was not a part of the original transaction, but was an afterthought. It was first suggested on the date it was written. Of course, it related to the single transaction between the parties, but not at the inception of the note and mortgage. It was suggested and written and came into the picture afterwards.

The next contention is that the court erred in finding that the letter previously adverted to operated as a continuing authority for the application of the royalties to payment of the note, and that the payments were voluntary payments tolling the statute of limitation; and in refusing to find that the letter operated as an equitable assignment of such royalties and thereby acknowledged the debt as of the date of the letter, but no later. The letter of the mining company, after referring to the note and requesting and directing that the royalties be deducted and paid to defendant, expressly stated that it should continue in effect until the note was paid in full, thus indicating clearly that it was intended to serve as continuing authority for such deductions and payments from month to month. And the conduct of the parties indicated that they understood it to constitute such authority, and that they treated it in that manner. But construed as an equitable assignment, it does not avail defendant anything for the reason that the royalties deducted from time to time were applied as payments on the note with the current assent and direction of defendant. Sums authorized and applied in that manner constitute voluntary payments and are sufficient to toll the statutes of limitation. Preston v. Ed. Hockady Hardware Co., 137 Okl. 283, 279 P. 332; Thompson v. Martin, 138 Okl. 138, 280 P. 589; James v. Wingate, supra.

Next comes the contention that the court erred in refusing to find that the credits upon the note were made exclusively pursuant to the letter of July 7, and that there was no other authority for the making of them. As previously stated, defendant owned the land and leased it to the mining company for the production of coal; plaintiff was the broker for the mining company in the sale and distribution of the coal mined; and Rice was treasurer and general manager of defendant and the mining company. The parties were in frequent contact —sometimes daily—respecting such matters as the tonnage mined and available for sale, the amount required to fulfill sales made by plaintiff, shipping directions, information touching shipments actually made, payment for coal shipped, the amount of royalties accrued, and other cognate matters. Rice was in the office of plaintiff almost every day, and the undisputed evidence was that the matter of making application of the accrued royalties to payment of the note was discussed on numerous occasions, and that at many different times he verbally authorized the retention of such royalties and their payment on the note. The testimony of the president and the treasurer of plaintiff was to the same general effect. It is perfectly clear that the letter was not the sole authority for the application of the accrued royalties to payment of the note, but that verbal authority was also given from time to time. And such discussions were not merely passive, in that they allowed plaintiff to do that which it already had the right to do; neither did they only constitute ratification of credits. They constituted affirmative authority, in addition to the letter. It is urged, however, that in order to be effective in saving the case against limitation, such discussions must have taken place not later than May 27, 1932, and that there was no evidence upon which to base the conclusion that any of them occurred within that time. The testimony of Rice that the matter was discussed from time to time for a period of thirty or sixty days after the appointment of the receiver for the mining company is relied upon to sustain the contention. But that testimony does not stand alone. At another place he testified that it was a live account, that they talked about their finances every month, and that they agreed to the payment of the royalties on the note; and at still another place he said that he was in the office of plaintiff perhaps once a week from the execution of the note

94

until the closing of the receivership—in May, 1934—and that they talked about the note once or twice a month. Considered as a whole and fairly construed, the evidence was that the matter of the application of the royalties to payment of the note was discussed frequently, once or twice a month, that verbal authority was given to make such application, that they were made, and that identical entries were made on the books of both plaintiff and those of defendant, including the credit and entry of September 30, 1932. There was no direct testimony that any particular discussion occurred on any particular date, but the evidence and its reasonable inferences sufficiently showed that some of the discussions took place in time to be of force and effect in saving the case against the bar of limitation.

The remaining contention is that the discussions which Rice had after the appointment of the receiver of the mining company were not binding on defendant for the reason that he was then the agent of another whose interests were antagonistic to those of defendant. When the president of plaintiff was appointed receiver of the mining company, he continued Rice as manager of that company. But the agreement was primarily between plaintiff and defendant. The mining company owed the royalties to some one, and it had no interest in the question whether they were paid to plaintiff or defendant, except the indirect and remote interest that their payment on the note would diminish its liability on the collateral note. Otherwise, it was merely to pay the royalties either to plaintiff or defendant, without any interest whatever as to which received them. Rice was treasurer and manager of defendant, but he bore no relation whatever to plaintiff. And the record fails to indicate even remotely that he acted fraudulently, collusively, or in bad faith. The facts and circumstances do not suggest disloyalty, dishonesty, or wrongful purpose on his part. Defendant received the full benefit of the royalties, and was in no wise injured by the agreement for their application to the note. We fail to perceive any sustainable basis for the contention that dual capacity or conflict of interest disqualified Rice to act for defendant with binding effect. Compare Kondos v. Mouser, 64 Okl. 168, 166 P. 707; Home Ins. Co. of New York v. Southern Motor Coach Corporation, 171 Okl. 94, 41 P.2d 870.

The judgment is affirmed.